**IN UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **GERTRUDE ANITA BROADWAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | **NO.  2:10-cv-02898-JPM-tmp** |
| **FEDERAL EXPRESS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>PLAINTIFF'S RESPONSES TO DEFENDANT'S STATEMENT
OF MATERIAL UNDISPUTED FACTS</u>**

Plaintiff responds to Defendant Federal Express Corporation ("FedEx") Statement of Material Undisputed Facts as follows:

1.      Plaintiff filed a charge with the EEOC on July 9, 2009 and identified the elimination of her position in a corporate realignment of April 2009 as the only allegedly illegal act by FedEx.  Deposition of Plaintiff, Gertrude Anita Broadway ("Plaintiff's Dep.") at 224:15 – 225:4; Exh. B-23.  Plaintiff received a right to sue letter and filed the instant lawsuit on December 15, 2010. Plaintiff's sole claim for monetary damages is for race discrimination under Title VII.  The only action claimed by Plaintiff to be discriminatory is the elimination of her position in the April 2009 realignment. Complaint, at ¶¶ 2-12; Plaintiff's Dep. at 9:22 – 11:24.

**RESPONSE:  Plaintiff admits the allegations in paragraph 1.**

2.      FedEx's Guaranteed Fair Treatment ("GFT") procedure and the Internal EEO ("IEEO") procedure have been in place throughout Plaintiff's tenure at FedEx.  The purpose of the GFT procedure is to allow employees to appeal certain discrete actions by

management, such as disciplinary actions or performance reviews.  The purpose of the

IEEO procedure is to allow employees to raise claims of discriminatory or retaliatory

treatment.  Complaints for discrimination or retaliation are excluded from the GFT

process. In both procedures, investigations are performed into the employee's complaints

and actions taken if appropriate, but the investigations are conducted according to

different procedures.  Declaration of Mary Davin ("Davin Decl.") at ¶¶ 4-5.

**RESPONSE:  Plaintiff admits in part and denies in part the allegations in**

**paragraph 2.  GFT complaints and investigations may evolve into internal equal**

**employment opportunity (IEEO) complaints and investigations.  See Plaintiff's**

**Exhibit 33, p.1.  See also Defendant's Proposed Finding No. 8.**

3.      Throughout Plaintiff's employment, and in particular since 2005, FedEx

also maintained policies calling for managers to issue non-disciplinary oral or written

counselings (known as on-line complements or counselings, or "OLCCs") for certain

performance issues. Davin Decl. at ¶ 6

**RESPONSE:  Plaintiff admits the allegations in paragraph 3.**

4.      In 2006, Plaintiff was working for FedEx as a Project Engineer Specialist

under operations manager Manoocher Hakimi. During this time frame, Mr. Hakimi

reported directly to Managing Director Sean Healy. On February 23, 2006, Mr. Hakimi

issued Plaintiff a performance review score of 1.7 out of 4.0. Plaintiff believed this score

was unjustified, and, accordingly, filed a complaint through FedEx's GFT process,

requesting that the score be removed or changed. Plaintiff's Dep. at 13:15–22; 20:23 to

21:10; Declaration of Manoocher Hakimi ("Hakimi Decl.") at ¶¶ 3-4. Davin Decl. at ¶ 8

**RESPONSE:  Plaintiff admits the allegations in paragraph 4.**

5.      Pursuant to FedEx policy, Plaintiff's GFT complaint was investigated by Sean Healy in conjunction with Human Resources Advisor Mary Davin. Mr. Healy found that Mr. Hakimi had identified and communicated numerous performance deficiencies of the Plaintiff orally and through emails, but that he had not properly documented these performance problems through FedEx's written OLCC system. Mr. Healy, therefore, decided in favor of the Plaintiff on her GFT complaint and, on March 13, 2006, issued a determination that Plaintiff's 1.7 performance review score be removed from her record, which Plaintiff believed to be the correct decision.  Plaintiff's Dep. at 22:7-9; 22:12-24; 24:7-14; 26:9-20; 43:4-9; 108:24 to 109:2; Exh. B1; Declaration of Sean Healy ("Healy Decl.") at ¶¶ 5-8; Deposition of Sean Healy ("Healy Dep.") at 65:23 to 66:3; Hakimi Decl. at ¶6; Davin Decl. at ¶ 9.

**RESPONSE:  Plaintiff denies the allegations in paragraph 5.  See Plaintiff's Exhibit 5, Davin, Dep. 24-25; and Plaintiff Exhibit 18a.**

6.      In Mr. Healy's March 10, 2006 meeting with Plaintiff regarding her GFT complaint, he told her that he had found evidence that Plaintiff had significant performance problems, even if those problems had not been properly documented through the OLCC system.  Mr. Healy advised Plaintiff that she needed to take responsibility for her performance problems, and that Mr. Hakimi had been instructed to properly document any such deficiencies from that point forward. Healy Decl. at ¶ 9.

**RESPONSE:  Plaintiff denies the allegations in paragraph 6. See Exhibit 1, Plaintiff's Declaration, para. 6.**

7.      During this meeting, Plaintiff told Mr. Healy that she wanted to be moved to a different manager.  Mr. Healy did not believe it appropriate to move Plaintiff at that

point because there had not been an opportunity for Plaintiff's performance problems to be properly addressed by Mr. Hakimi through FedEx's performance improvement procedure. Mr. Healy advised Plaintiff during the meeting that he did not believe it appropriate to move her to a different manager at that time.  Plaintiff's Dep. at 34:13 – 35:15; Healy Decl. at ¶¶ 10-11.

      **RESPONSE:  Plaintiff admits in part and denies in part the allegations in paragraph 7.  Plaintiff admits that she wanted to be removed.  She denies Mr. Healy's motivation in refusing her request.  See Plaintiff's Exhibit 1, para. 7.**

      8.     On March 29, 2006, Plaintiff filed another GFT complaint against Mr. Hakimi, as she felt he was continuing to unfairly assess her performance. The GFT complaint was converted into an internal EEO complaint by Mary Davin because Plaintiff claimed she was the victim of retaliation by Mr. Hakimi.  Plaintiff's Dep. at 70:9-12; Davin Decl. at ¶ 10.

      **RESPONSE:  Plaintiff denies the allegations in paragraph 8.  The complaint was received by HR on April 5, 2006.  Plaintiff named Mr. Healy in the same IEEO and also claimed she was the victim of discrimination and retaliation. Plaintiff's Exhibit 18.**

      9.     Pursuant to Plaintiff's request, Sean Healy was not involved in the investigation of her IEEO complaint against Mr. Hakimi. On May 22, 2006, Managing Director Mike Macyauski issued an investigative report concluding that no policy violations had been found.  Plaintiff was advised that the investigation had been completed and her GFT / IEEO closed in late May or early June.  Plaintiff's Dep. at 97:21 to 99:22; 111:6-13; 111:24 to 113:3; 117:2-14; Exh. B-9; Davin Decl. at ¶¶ 11-13.

**RESPONSE:  Plaintiff admits the allegations in paragraph 9.**

10.     Ultimately in 2006, Mr. Healy decided to move Plaintiff to a different work group.  This decision was based on his conclusion that Plaintiff and Mr. Hakimi continued to have a contentious working relationship which was becoming a distraction for the work group and that it did not appear likely to improve.  Mr. Healy therefore assigned Plaintiff to manager William "Trip" Jones, thereby effectively granting Plaintiff's request to be moved from Hakimi to a different manager.  Healy Decl. at ¶ 12-

**RESPONSE:   Plaintiff denies the allegations in paragraph 10.  Plaintiff appealed to V.P. Amy Langston, Healy's superior, and after that appeal Plaintiff was told by Langston that Healy would get back with her. See Plaintiff's Exhibit 1a, Broadway, Dep.  83-84; see also Plaintiff Exhibit 18a.**

11.   Plaintiff worked under Trip Jones from the summer of 2006 through the corporate realignment in April of 2009. Plaintiff filed no complaints of unfair treatment throughout this period and does not claim to have experienced any unfair treatment by Mr. Jones. Plaintiff's Dep. at 151: 12-18; Declaration of William "Trip" Jones ("Jones Decl.") at ¶3; Davin Decl. at ¶¶ 13-14; Healy Decl. at ¶14.

**RESPONSE:  Plaintiff admits the allegations in paragraph 11.**

12.     In March of 2008, Mr. Healy was promoted to the position of Vice-President.  As Vice-President, Mr. Healy directly supervised Managing Director Kirsten King, who in turn directly supervised Jones.  Healy Decl. at ¶ 14.

**RESPONSE:  Plaintiff admits the allegations in paragraph 12.**

13.     In June of 2008, FedEx Corporation and several of its operating companies, including Federal Express Corporation, began looking for ways to cut costs

and increase efficiency in light of declining revenue as a result of a weakened economy. After discussing many options, Booz & Company ("Booz") was hired to assist with creating a plan to cut costs and increase efficiency. Declaration of Robert "Bob" Bennett ("Bennett Dep.") at ¶ 3.

**RESPONSE:  Plaintiff denies the allegations in paragraph 13. See Plaintiff's Exhibit 3, Bennett Dep. p. 82,84.**

14.     In November of 2008, FedEx experienced the worst year-over-year decline in air-cargo traffic since it began keeping records.  FedEx's package volume had decreased back to pre-2000 levels.  To accommodate the economic shortfall, the company reduced approximately 5,000 hourly employees throughout the operation as a result of normal attrition.  The lower package volumes and smaller hourly workforce did not require the same level of management and staff positions.  Therefore, in consultation with Booz, FedEx embarked on a realignment process designed to better balance staffing needs and to identify low value and/or duplicative work, and to bring its cost structure into line with the current economic environment. Bennett Decl. at ¶¶ 4-5; Bennett Dep. at 26:1 to 27:17.

**RESPONSE:  Plaintiff denies in part and admits in part the allegations in paragraph 14. Plaintiff denies the last sentence of the allegation. Booz did not use low value or duplicative work as criteria when deciding who to RIF.  See Plaintiff's Exhibit 3, Bennett Dep. pp. 80,84.**

15.     The realignment would include consolidation of departments and the elimination of certain internal services, thereby reducing total costs to the company by millions of dollars. It was intended, however, that everyone at FedEx whose job was

eliminated would be offered other open positions within the company.  Bennett Decl. at ¶ 6; Bennett Dep. at 28:10-18.

**RESPONSE:  Plaintiff admits in part and denies in part the allegations in paragraph 15. Plaintiff denies that the realignment plan was specific.  See Plaintiff's Exhibit 30. Plaintiff admits the remainder of the allegations.**

16. Vice President Bob Bennett was selected to lead the realignment process at FedEx. Mr. Bennett assisted in determining overall criteria for the elimination of positions in the realignment, which included an analysis of the relative value/impact of work performed throughout the overall organization. Once the excess work had been identified, decisions regarding individuals to be affected occurred.  Job families with comparable positions performing the work were identified and continuous service of the employees in such comparable positions was used to determine individuals to be affected. Bennett Dep. at 54:20 to 55:9; 63:7-14; Bennett Decl. at ¶ 7.

**RESPONSE:  Plaintiff admits in part and denies in part the allegations in paragraph 16. Plaintiff denies that Bennett established the criteria to be used when making realignment decisions. See Plaintiff's Exhibit 3, Bennett Dep. p. 43-45, 54-57, 68, 77-80, 85.**

17.    In accordance with the company-wide directive to cut costs and consolidate groups, Mr. Bennett asked Mr. Healy to develop a plan to reduce staffing by 10% while minimizing the impact to internal and external customers.  To this end, Mr. Bennett directed Mr. Healy to review each manager area and determine the work that was providing lower value or was being performed in multiple areas so that it could be used to

identify excess positions, which Mr. Healy did for each of his managers' workgroups. Bennett Decl. at ¶ 8; Healy Decl. at ¶15; Healy Dep. at 22:11-15; 25:7-14; 77:11-18.

**RESPONSE:  Plaintiff denies the allegations in paragraph 17.  Healy testified that he received his instructions from the PMO and Lenny Feiler rather than Bennett.  See Plaintiff's Exhibit 2, Healy Dep. p 21.   Healy cut positions and people without prior written justification.   See Plaintiff's Exhibit 3, Bennett Dep. p. 53, 68, 76.**

18.      In Mr. Jones' workgroup, Mr. Healy identified the following functions as low value without any consideration to which individuals might have been performing those duties:  (1) web support for Ramp Engineering; (2) the Density Project; (3) Automation of Dangerous Goods (Auto DG); and (4) the Winter Operations manual. Healy Decl. at ¶16.

**RESPONSE:  Plaintiff denies the allegations in paragraph 18. Plaintiff states that this allegation is conclusory, argumentative, self serving and  is not supported by documents.**

19.      The reasons that Healy identified these functions were as follows: (1) web support was more properly a function that should have been assigned to another group, EBS, since it more closely fit with what EBS regularly did; and (2) the Density Project, Auto DG, and the Winter Operations manual were all projects whose size and scope had significantly diminished over time due to the maturity of the initiatives.  These projects were considered in "maintenance phase" whereby only occasional attention was necessary. Mr. Healy felt that any disruption with respect to these functions would have the least negative impact on internal and external customers.  Healy Decl. at ¶¶ 17-18;

Healy Dep. at 28:5 – 25; 32:6 – 33:1; 34:18 – 35:5; 42:24 – 43:14; 44:15 – 45:10; Exh. 1 thereto; Davin Decl., Exh. A thereto.

**RESPONSE: Plaintiff denies the allegations in paragraph 19. Healy made the decision to remove Plaintiff based upon unwritten criteria that applied only to her due to his discriminatory racial animus. See Defendant Statement No. 18. Healy did not apply the written criteria – Plaintiff's Exhibit 37. Jones assigned the functions to other engineers including Rachel Riley. See Plaintiff's Exhibit 6, Riley Dep., p. 88 See also Plaintiff's Exhibits 13-15.**

20.     At the time, Plaintiff performed the following functions: web support for Ramp Engineering, the Density Project, Auto DG, and the lift/bump priority list. These functions had previously been assigned to her by Trip Jones with no input from Mr. Healy. Accordingly, Plaintiff performed three of the four functions identified by Healy as low value. The final low value function, Winter Operations, was being performed by an African-American male Project Engineer Specialist, Tony Pittman. Jones Decl. at ¶ 4. Healy Decl. at ¶19; Plaintiff's Dep. at 197:10 – 199:18; Healy Dep. at 30:9-13; 41:5-15; 47:20 – 48:9; Exh. 1 thereto.

**RESPONSE: Plaintiff denies the allegations in paragraph 20. Plaintiff's duties were more than those listed. See Plaintiff's Exhibit, Broadway Declaration, para. 11. The Healy deposition cites do not address all the functions Plaintiff performed.**

21.     Between Plaintiff and Pittman, Plaintiff had the least time in continuous service. In fact, Plaintiff had the least continuous service of the three Project Engineer Specialists under Trip Jones. Plaintiff also had a lower active review score (3.5 for

Plaintiff v. 3.8 for Pittman).  Pittman, furthermore, had more specific skills and experience than Plaintiff for the functions that would remain within Jones' group after the realignment.  Healy Decl. at ¶ 20.

**RESPONSE:  Plaintiff denies the allegations in paragraph 21.  The factors listed were not preestablished. See Plaintiff's Exhibit 37. Plaintiff admits she was junior to Pittman but denies that Pittman's skills and experience were greater than hers for the work of the unit. See Plaintiff's Exhibits 13 and 13 a compared to Plaintiff's Exhibit 38 and 38a.**

22.  In accordance with the applicable criteria, the position held by Anita Broadway was identified as excess and eliminated in the realignment. No one in Plaintiff's division below Mr. Healy was involved in the decision to eliminate Plaintiff's position. Affected employees actively at work were notified on April 3, 2009 of their affected status.  Because Plaintiff was off work on a medical leave at that time, she was not notified until April 6, 2009.  Bennett Decl. at ¶ 9; Healy Decl. at ¶ 21; Jones Decl. at ¶ 5.

**RESPONSE:  Plaintiff denies the allegations in paragraph 22. See  Plaintiff's Proposed Statement of Material Undisputed Facts No. 13,14, 18 and 20.**

23.      At that time, Plaintiff was told that her pay and benefits would continue through May 31, 2009.  Plaintiff was also offered the option of applying for another position with FedEx or taking an enhanced severance package.  FedEx sent Plaintiff a list of ten open positions at or below her grade and pay level upon which she could bid.  As an affected employee, Plaintiff received special consideration and priority for those positions.  Plaintiff's Dep. at 161:18 to 162:12; Davin Decl. at ¶ 15; Jones Decl. at ¶ 6.

**RESPONSE:  Plaintiff admits in part and denies in part the allegations in paragraph 23.  Plaintiff applied for several engineering vacancies in Memphis for which she was rejected.  Plaintiff's Exhibit 3, pp. 104-121.  At the time Plaintiff was riffed, Healy had a vacant position Project Engineering Specialist, grade 27 position in Plaintiff's unit which he filled it with Bruce Houston, a Caucasian.   See Plaintiff's Exhibit 3, Jones, Dep. pp. 55-56.  Plaintiff did not receive either special consideration or priority for any position. See Plaintiff's Exhibit la, Broadway Dep. p. 162.**

24.     Within a month, Plaintiff was offered and accepted a position in Albuquerque, New Mexico with identical pay and benefits and a relocation package. Plaintiff accepted and remained in that position from June through the end of August, 2009.  Davin Decl. at ¶ 16; Plaintiff's Dep. at 162:10 to 163:24; 165:19-24; Exh. B-15.

**RESPONSE:  Plaintiff admits in part and denies in part the allegations in paragraph 24.  Plaintiff denies that her assignment was identical in pay and benefits to her Memphis assignment.  See Plaintiff's Exhibit 1a, Broadway Dep. p. 162.**

25.     In July of 2009, Plaintiff bid on and was offered a position back in Memphis, Tennessee as an "Engineering Specialist" at a lower salary, which she later accepted.  Plaintiff currently works for FedEx as a grade 24 Engineering Specialist. In that position, she has received pay raises every year. Plaintiff's Dep. at 213:12 to 214:24; 219:1-20; Davin Decl. at ¶ 16.

**RESPONSE:  Plaintiff admits the allegations in paragraph 25.  However, Human Resources had to make the recommendation for her to be allowed to return. Plaintiff's Exhibit 5, Davin Dep. p. 34.**

26.     Following the realignment, Plaintiff was not replaced.  Her job duties were either eliminated or absorbed by existing employees.  The Density Project was ended and the other duties were added to the responsibilities of other FedEx employees, including Tony Pittman, who took over the lift/bump priority list and part of Auto DG.  Jones Decl. at ¶ 7.

**RESPONSE:   Plaintiff denies the allegation in paragraph 26.  The density project was not ended.  See Plaintiff Exhibits 13-15.  Plaintiff's work was distributed to other project engineering specialists including Engineering Specialist Rachel Riley (Auto DG). The number of engineers remained the same because as Plaintiff was moved out, Bruce Houston, a Caucasian engineering specialist, was moved into the unit.  See Response number 23 supra.  Accordingly, all tasks performed by plaintiff remained in Jones' unit, although Healy said to EEO that they were transferred into the Training unit. See Plaintiff's Exhibit 29.**

27.     Plaintiff argues that her discrimination claim is supported by the fact that Rachel Riley, a white female who also worked under Jones, was not affected by the realignment. Though both reported to Jones, Plaintiff and Ms. Riley, a Senior Engineering Specialist, had different job codes, different titles, and performed very different functions.  They were never compared against each other for purposes of the realignment. Plaintiff's Dep. at 228:13 to 229:3; Exh. B-26; Healy Decl. at ¶ 22; Jones Decl. at ¶ 8.

**RESPONSE: Plaintiff admits the first sentence of  paragraph 27.  Plaintiff denies that she and Riley had different jobs, performed different functions and otherwise denies the remaining allegations in paragraph 27.   Riley was hired as a**

**grade 27 and Plaintiff was a grade 27.  See Plaintiff's Exhibit 27.  Both were in the same job family.  See Plaintiff's Exhibit 3, Jones Dep. p. 25,32. See also Plaintiff's Exhibits 13-15.  Riley performed the work functions, AOD audits, the same as Brignole, Pittman, Hardy and Guyton.  See Plaintiff's Exhibit 6, Riley Dep., p. 68. Riley also assumed Plaintiff work function of Auto DG.  See Plaintiff's Exhibit 6, Riley Dep., p. 88.**

28.     At the time of the realignment, Ms. Riley was responsible for administering the "AOD audits." The AOD audits prepared FedEx's ramp operations world-wide for audits from the civil aviation authorities (e.g., FAA).  Mr. Healy and Mr. Jones both considered the AOD audit a critical high value function, the disruption of which would have potentially severe consequences for FedEx's operations. Critical functions such as that performed by Ms. Riley were not affected in the realignment. Healy Dep. at 74:9 to 75:10; Healy Decl. at ¶ 23; Bennett Dep. at 97:7-20; Jones Decl. at ¶ 9.

**RESPONSE:  Plaintiff denies the allegation in paragraph 28.  Jones' unit, rather than Riley individually, was responsible for administration of AOD audits. See Response in Finding No. 27.  Three other engineers in the family assisted with this function which was diminishing over time.  See Plaintiff's Exhibit 16, Brignole evaluation, p. 3.  Healy only identified Riley's work as "critical" of all engineers who reported to his managers and he only identified AOD as a critical function to his division.  See Plaintiff's Exhibit 2, Healy Dep. 33, 41, 48, 58, and 78.**

* 29.     Ms. Riley had been hired by Jones for the specific purpose of administering the AOD audits.  Prior to accepting the position under Mr. Jones, Ms. Riley

had been in management in the Memphis hub aircraft audit department, where she had been responsible for performing the AOD audits for the past three years.  This was a significant consideration in offering Ms. Riley the position and this experience was of great use to Ms. Riley in performing her duties under Jones once she was hired.  Plaintiff had never performed AOD audits and had no experience with them. Riley Dep. at 21:19-22; 79:14 to 83:13; Plaintiff's Dep. at 196:22 to 197:9; Healy Decl. at ¶ 24; Healy Dep. at 76:1 – 16.

**RESPONSE:  Plaintiff denies the allegations in paragraph 29.  With Healy's approval, Jones hired Riley as a project engineering specialist, grade 27.  See Plaintiff Exhibit 2, Healy Dep. p. 53 and Plaintiff's Exhibit 3, Jones, Dep. 29.  There is no job posting which describes the position as critical or as anything other than a project engineering specialist.  See Plaintiff's Exhibit 45.   Plaintiff succeeded Brignole in performing a part of  Brignole's work functions.  The audit work function under Brignole was group unit work with three other engineers.  See Plaintiff's Exhibits 13-15.**

30.     After the realignment, it was determined that Ms. Riley had been hired into the wrong grade because Trip Jones had incorrectly applied the formula for degree equivalence.  Accordingly, her grade was reduced to 24 and her title was changed from Senior Engineering Specialist to Engineering Specialist, but she continued doing exactly the same duties with respect to the AOD audit.  Regardless of the grade and title that Riley had retained at the time of the realignment, she would not have been compared against Plaintiff as her function and position would have been deemed critical. Healy Decl. at ¶ 25; Riley Dep. at 86:8-20;Davin Decl. at ¶ 17.

**RESPONSE:  Plaintiff denies the allegations in paragraph 30.  The change in Riley's grade from 27 to what should have been 22 was prompted by Plaintiff's internal EEO.   Plaintiff's Exhibits 40 and 44. See Also Plaintiff's Exhibit 5, Davin Dep. p. 77-78.**

31.     In Mr. Healy's division, seventeen employees were affected by the realignment.  Eleven were Caucasian; five, including Plaintiff, were African-American, and one was Hispanic.  Mr. Healy identified the functions of numerous white employees, including Charles Hester, Jacqueline Walters, John Pongetti, and Andrew Foster, as low value and/or duplicative, resulting in their positions being eliminated in the realignment. Healy Decl. at ¶ 26.

**RESPONSE:  Plaintiff denies the allegations in paragraph 31.  Foster was not in Healy's division.  Hester and Walters were not engineers. See Plaintiff's Exhibit 1, paras. 15 and 16.  Pongetti  was treated differently from Plaintiff.  See Plaintiff's Exhibit 35.**

32.     Plaintiff filed an internal EEO complaint claiming that the selection of her position for realignment was the result of retaliation. The result of the investigation into that complaint was that no policy violations were found. Another investigation was performed after Plaintiff filed her external EEOC charge in order to respond to the EEOC.  Once again, there were no findings of any policy violations. Plaintiff filed no internal EEO or complaint of discrimination or retaliation between 2006 and the realignment in 2009. At the time of the realignment, Mr. Healy was unaware of Plaintiff having ever made any complaint of discrimination or retaliation. Davin Decl. at ¶ 18; Healy Decl. at ¶ 18.

15

**RESPONSE:  Plaintiff denies and part and admits in part the allegations in paragraph 32.  Plaintiff's EEO was a result of retaliation and discrimination.  See Plaintiff's Exhibit 18.   Plaintiff's first complaint was in 2006 and her last complaint was in 2009.  She filed no complaints in 2007 and 2008.  Healy was aware of Plaintiff's complaints because he was necessarily interviewed by HR in connection with them.  Plaintiff's Exhibit 5, Davin Dep. 57, 60.   Healy was also chafed at Davin's inquiry about the complaints.  See Plaintiff's Exhibit 26.**

33.    An analysis was done by Booz to determine whether the realignment decisions had had any adverse impact on minorities.  No adverse impact was found with selection of the individuals identified for reallocation in April of 2009. Bennett Decl. at ¶ 10.

**RESPONSE: Plaintiff denies the allegations in paragraph 33.  There is no written documentation in evidence.  See Plaintiff's Exhibit 3, Bennett's Dep. pp. 80-84.**

34.    Plaintiff understood that the purpose of the realignment was to address the business needs of FedEx and to address areas that were not as important to the business. Other than the fact that she and a *white* manager, Richard Wooten, were affected in the realignment, Plaintiff acknowledged she is aware of no evidence that any positions in Healy's group were eliminated for other than legitimate business reasons. Plaintiff's Dep. at 209:15 - 210:6; 213:1-8.

**RESPONSE:  Plaintiff denies the allegations in paragraph 34.  See Plaintiff's Exhibit 1, p. 203 and  Plaintiff's Exhibit 1a, Broadway Declaration, para. 21. Plaintiff has no direct evidence regarding Healy's judgment in purportedly**

implementing the company's realignment.  Her information came from her

manager, Trip Jones. Plaintiff  Exhibit 1, para. 12.

35.     Plaintiff has not identified any comments by Sean Healy or any other

person with any decision-making role with respect to the April 2009 realignment that

would suggest any discriminatory animus towards African-Americans. Plaintiff's only

claimed evidence of such animus was her lack of awareness of any African-Americans

that Healy had hired while she had known him. Plaintiff acknowledged, however, that she

knew nothing about the qualifications or quantity of any respective applicants for any of

the open positions under Healy during this time period.  Plaintiff's Dep. at 195:15-18;

203:13 to 204:11

**RESPONSE:  Plaintiff denies the allegations in paragraph 35.  Plaintiff**

**evidence includes information beyond her own experiences.  See her Response to**

**Paragraph 36, infra and the Exhibits thereto.   See Also Plaintiff Exhibit 1,**

**Broadway Declaration, para. 21.**

36. Plaintiff characterized her relationship with Sean Healy as "very

comfortable" until she received the low performance review from Hakimi in 2006, and

had never before felt that Healy ever treated her inappropriately. Plaintiff's Dep. at

184:9-12; 185:13–22. Plaintiff stated in her deposition that she was "confident" that the

elimination of her position was the result of "retaliation" by Mr. Healy rather than

discrimination. Plaintiff's Dep. at 223:18 – 224:5.

**RESPONSE:  Plaintiff denies the allegations in paragraph 36.  See Plaintiff**

**Exhibits 40, p. 3, para. 1; Plaintiff Exhibit 41, p. 2, Question 5; Plaintiff Exhibit 39,**

**pp 1-2; See also Exhibit 10a, Odigie Dep. and Exhibit 10, Odigie Declaration;**

**Plaintiff Exhibits 8 and 9, Diane Watkins Jackson Dep. and Declaration; and**

**Plaintiff's Exhibit 11, Carpenter Declaration.**


Respectfully submitted,

/s/ John W. Walker
JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, Arkansas 72206
501-374-3758 (telephone)
501-374-4187  (facsimile)
Email:  johnwalkeratty@aol.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2011, a true and correct copy of the foregoing was filed and served electronically with the Clerk of Court by using the CMK/ECF system which will send a notice of electronic filing to the following:

John W. Campbell (BPR 16017)
Senior Counsel
Federal Express Corp.
3620 Hacks Cross Road,
Building B, 2nd Floor
Memphis, Tennessee 38125
Telephone: (901) 434-8403
Facsimile:   (901) 434-9279
Email:  jwcampbell@fedex.com


/s/ John W. Walker