IN UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GERTRUDE ANITA BROADWAY,  )<br>)<br>    Plaintiff,            )<br>v.                               )<br>                                 )<br>FEDERAL EXPRESS,      )<br>                                 )<br>    Defendant.          ) | CIVIL ACTION<br>NO. 2:10-cv-02898-JPM-tmp |

**PLAINTIFF'S STATEMENT OF MATERIAL UNDISPUTED FACTS**

Plaintiff submits this Statement of Material Undisputed Facts order to respond to Defendant's and in order to demonstrate that her facts are sufficient to allow this matter to proceed to trial. Plaintiff states as follows:

1. When Plaintiff was selected by Defendant to be reduced in force in the engineering unit, she was satisfactorily performing her work, this is reflected by her job evaluations over time, which were far above average. Plaintiff's Exhibit 12. She performed numerous assignments and also assisted other members of her group. Plaintiff Exhibit 1, paras, 11 and 13.

2. Plaintiff and Melba Hassanen were the only two engineers demoted and Plaintiff, Melba Hassanen and Antonio Pittman were there only three engineers analyzed. Plaintiff's Exhibit 11, Carpenter Declaration., para. 8; Plaintiff's Exhibit 2, Healy Dep. 41.

3. Healy had a history of complaints from African American engineers under his supervision due to practices of race. Plaintiff's Exhibit 2, Healy Dep. p.68; Plaintiff 's Exhibit 8, Watkins Dep. pp. 62, 67, 110-112, 124, 128, 135, 136.

1

4. Between April and July 2008, because of complaints of race discrimination and/or violations of other company policies from two African American engineers, Mike Odigie and Diane Watkins-Jackson, in Healy's division, Healy was placed on two separate corrective action plans. See Plaintiff's Exhibits 10, 11, 19, 21, 31, 32, and 35. Although Exhibit 32 reflects corrective action against Richard Wooten, the complaint was initially against Healy. Wooten was a manager who reported to Healy. Plaintiff herself had filed internal complaints of discrimination and unfair treatment against Healy in 2006 which resulted in her transfer to Jones' unit. Plaintiff's Exhibit 34. Each complainant suffered some adversity after their complaints. Plaintiff's Exhibits 10-11, 19, 21, 31-2, and 35.

5. Healy did not have complaints filed against him by white employees under his supervision at any time. Plaintiff's Exhibit 2, Healy Dep. p. 21.

6. Healy did not hire blacks for manager or managing director positions. Plaintiff's Exhibit 9, para. 7; Plaintiff's Exhibit 10, para. 23; Plaintiff's Exhibit 11, paras. 15 and 16.

7. The essence of complaints from black persons against Healy was that he diminished the worth of their work and otherwise treated them in an adverse manner. See Plaintiff's Exhibit 10, paras. 9 and 26; Plaintiff's Exhibit 11, paras. 8 and 12; and Plaintiff's Exhibit 34.

8. Employees internal complaints of discrimination are directed to HR and Legal. During their pendency managers are instructed that they should be careful in imposing adverse action without coordination with Human Resources. Plaintiff's Exhibit 33.

9. Between January 1, 2007 and May 2008, Healy and Jones discussed Plaintiff's having had filed race complaints against Healy which had resulted in his adverse decision regarding her being overturned. Plaintiff's exhibit 34.

10. Healy was aware in the fall of 2008 that the company would make reductions in the workforce reductions by 10%. Plaintiff's Exhibit 2, Healy Dep. pp. 56-57; and Plaintiff's Exhibit 5, Davin Dep., pp.58-59. Healy chose to reduce in force only the Plaintiff from the group of engineers managed by Trip Jones on April 6, 2009. See Plaintiff's Exhibit 23a. and Plaintiff's Exhibit 3, Jones, Dep. 46. He also chose to RIF Melba Hassanen, African American engineer from another engineering unit he supervised. Plaintiff's Exhibit 11, para. 8.

11. Plaintiff was not initially included on the company's RIF/severed list as of April 3, 2009. See Plaintiff's Exhibits 22, 23 and 24.

12. Between April 5, 2009 at 11:15 p.m. and April 6, 2009 at approximately 9:30 a.m., company officials met, discussed and decided to RIF Plaintiff. See Plaintiff's Exhibits 23 and 23a.

13. On May 4, 2009, Plaintiff complained that she was being discriminated against by the company because Healy treated a far less qualified and junior white engineer more favorably. See Plaintiff's Exhibit 40.

14. Before Plaintiff's May 4, 2009 complaint, the company had announced that "any selection will be made on continuous service", i.e. most recent hire date. Plaintiffs Exhibits 30 and 37. Federal Express attorneys Richards and Page informed Booz that this was the criterion to be used.

15. At the time that Plaintiff was moved out of the department Bruce Huston was

3

being moved in.  Plaintiff's Exhibit 4, Jones Dep. pp.55-56.

16. According to Vice President Robert Bennett who oversaw the RIF, Healy was required to: a) define excess work; b) provide a list of jobs in the family group to be eliminated; and c) take steps to ensure that the "senior people" were not the first to be cut. Plaintiff's Exhibit 3, Bennett Dep. p. 97 and Plaintiff's Exhibit 3a- Bennett declaration, para. 7.

17. In Plaintiff's May 4, 2009 internal EEO complaint, Plaintiff identified Rachel Riley as least senior in their job family. She also complained that the company had given Riley favored treatment by hiring her as a grade 27 when Riley was only qualified as a grade level 22, engineer.   Plaintiff's Exhibit 40.

18. The company denied Plaintiff's discrimination charge but held that Riley should have been hired at grade level 22. Plaintiff's Exhibit 44, p. 2.

19. The company defends the retention decision of Riley over Plaintiff by asserting that Riley's work was more critical and of higher value to the unit than Plaintiff's.  The RIF plan does not use either criterion as a RIF factor; only seniority.  See Plaintiff's Exhibits 30 and 37.

20. On July 23, 2009, after reviewing his response with legal, Healy would not provide the company HR department with a specific response why Riley was not chosen rather than Plaintiff for the realignment. Plaintiff Exhibit 28.

21. When EEOC asked essentially the same question on September 28, 2009, Healy declined to address Rachel Riley's status to the EEOC inquiry whether "other project engineering specialists [were] performing the same job functions as Plaintiff, Healy said "<u>No</u>".  In fact, there were other engineers who worked with Plaintiff in Ramp

4

Engineering including Rachel Riley. See Plaintiff Exhibit 29, p. 2.  See also Finding No. 20.

22.   Plaintiff and Riley were in the same job family (Plaintiff's Exhibit 3, Jones Dep. pp. 25, 32); reported to the same manager, William "Trip" Jones; under the general supervision of VP Sean Healy; and they were subject to Jones' assignments. Riley now performs the Auto DG job function previously held by Plaintiff.  Plaintiff's Exhibit 6, Riley Dep. p. 88. AOD audits were also performed by Chief Engineer Mark Guyton and Project Engineering Specialists Joanne Hardy and Antonio Pittman. Pittman was AOD audit backup. Plaintiff Exhibits 13-15.  Teresa Brignole was a project engineer who previously assisted with the AOD audits under Jones. Plaintiff Exhibit 16. Rachel Riley was added to the unit after Brignole left the unit. See Plaintiff's Exhibit 17 and Exhibit 27.

23. Jones' audit operations received a failing audit score after Riley took over some Brignole's work function during her first year.  See Plaintiff Exhibit 17, p. 3.

24. According to Trip Jones, Riley's main work function was to work with field operations.  See Plaintiff's Exhibit 17, p. 4. [put in Riley's own description of work]

25.  Healy told Human Resources that Plaintiff's job functions were eliminated as a part of the realignment and that the work previously performed by Broadway was transferred to another unit, "training".  Plaintiff's Exhibit 29. Plaintiff's work remained in Jones' unit with some of it being performed by Pittman. See Plaintiff Exhibit 3, Jones Declaration. para. 7; Plaintiff's Ex 6; Riley Dep. p. 88.

26.  After having filed a Guaranteed Fair  Treatment Procedure (GFTP) and/or

5

EEO against Healy in 2006, Plaintiff was into transferred William "Trip" Jones' unit. Plaintiff's Exhibit 1, para. 9.

27. When Teresa Brignole was leaving Jones' unit, Plaintiff took over her most important function which was Density. Plaintiff's Exhibit 16, pages 2-3 and Plaintiff's Exhibit 1, para. 10.

28. The AOD audit value was exaggerated by Healy and Jones. In May, 2007, Jones wrote that Brignole was "working with AOD audit" and "the audit work was [decreasing]." Plaintiff Exhibit 16, page 3.

29. Healy was upset that African American employees, including Plaintiff, who had filed EEO charges regarding his employment practices between 2006 and 2009. Plaintiff's Exhibits 10, 11, 19, 25, and 26. See also Plaintiff's Exhibit 5, Davin Dep., pp. 25-27, 29.

30. The Booz Plan was identified as a "restructuring project plan". Number 17 therein required a "process for identifying excess." The Booz Plan does not define "critical". Plaintiff Exhibits 30 and 37. See also Plaintiff Exhibit 3, Bennett Dep. p. 76-77.

31. The Booz Plan also required that job families were to be developed to "ensure final clarification of positions to be eliminated (Number 39); confirm selection criteria (Number 46); and develop criteria for CSSD (Number 111). Plaintiff Exhibit 30.

32. Healy was not aware of the Booz (restructuring project plan). See Plaintiff's Exhibit 2, Healy Dep. p. 21.

33.  Bennett could not explain where the written criteria for job reduction were located nor did he ever see the adverse impact analysis performed by Booz. Plaintiff Exhibit 3, Bennett Dep. pp 80, 84.

34.  Healy was not in a position to be fully informed and to be able to compare the work of each of the approximately 50 engineers under his supervision in March, 2009. See Plaintiff's Exhibit 2. Healy Dep. p. 37.

35.  Healy stated that Project Engineering Specialist John Pongetti was not demoted.  Plaintiff Exhibit 35; Plaintiff's Exhibit 2, Healy Dep. p. 18 and also Plaintiff's Exhibit 25.  Healy also stated that Jacqueline Walkers and Chuck Hester were Riffed. Neither was an engineer.

36.  Healy lists Andrew Foster as being a RIF in his division.  Andrew Foster remained in Memphis after the realignment.  He was a younger, recently hired employee who was not in Healy's division.  See Plaintiff's Exhibit 35 and Plaintiff Exhibit 1, para. 16.

37.  On May 28, 2009, Plaintiff applied for the position of Business Strategist among others.  The Business Strategist position was posted on May 22, 2009 and was to be filled by May 29, 2009 by Robert Bennett.  Legal influenced the outcome of that position.  A white person approximately 30 years old who, like Plaintiff, was affected by the realignment was awarded the position. Shirley Harris of the Legal Department was responsible for determining who was to be interviewed.  Plaintiff was not afforded the courtesy of an interview for the position. Plaintiff's Exhibits 42, 42a, and 43 and also Plaintiff's Exhibit 3, Bennett Dep. p. 107-121.

Respectfully submitted,

/s/ John W. Walker
JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, Arkansas 72206
501-374-3758 (telephone)
501-374-4187  (facsimile)
Email:  johnwalkeratty@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of January, 2012, a true and correct copy of the foregoing was filed and served electronically with the Clerk of Court by using the CMK/ECF system which will send a notice of electronic filing to the following:

John W. Campbell (BPR 16017)
Senior Counsel
Federal Express Corp.
3620 Hacks Cross Road,
Building B, 2nd Floor
Memphis, Tennessee 38125
Telephone: (901) 434-8403
Facsimile:   (901) 434-9279
Email:  jwcampbell@fedex.com

/s/ John W. Walker