UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GERTRUDE ANITA BROADWAY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION |
| ) | NO.  2:10-cv-02898-JPM-tmp |
| FEDERAL EXPRESS, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REVISED SUBMISSION OF DE 37 PER COURT ORDER**

The plaintiff understands the Court's Order of April 18, 2012 and its preceding discussion on thereof to require:

a) Specific response to Defendant's basic arguments in its Motion for Summary Judgment; and

b) Bringing the court's direction to the specific positions of the plaintiff's exhibits in DE 36.

Plaintiff provides the following brief responses as directed by the Court.

Defendant's Motion for Summary essentially makes three points.

a.  Rachel Riley was not similarly situated to plaintiff Broadway.

b. Race was not a factor in the RIF because more than twice as many white employees were "affected";

c. Defendants' legitimate nondiscriminatory reason for its' adverse treatment of plaintiff was due to the low value of the work functions she performed; and

d. Plaintiff cannot establish that defendant's action with respect to her RIF were pretextual.

1

### I. Riley is similarly situated to plaintiff.

Rachel Riley, a white recently hired engineer, was similarly situated to plaintiff. Riley was in the same job family or work group as plaintiff and other engineers in her group. PEx3, Bennett dep., p. 56, lines 8-12; and PEx4, Jones dep., p. 32, lines 7-8. The same supervisor made job assignments and evaluated the work performances of each engineer under him. See PExs. 13-17, 38-38a. The job evaluations reflected by these exhibits describe their work as similar with the same or similar and sometimes overlapping functions. They also indicate that all persons in Jones' unit performed each other's work functions. Plaintiff, Teresa Brignole, Antonio Pittman, Joane Hardy, and Mark Guyton all performed similar job functions. When Rachel Riley joined the group, she did likewise; she did what the engineering group did. PEx17, p. 3, Section 2; PEx17a, Section 2.

The AOD function was one of the assignments of Engineer Teresa Brignole before Riley was hired. Before and after Riley was hired, Brignole's duties, including AOD audit were assigned to group member including the plaintiff. After Brignole left, Riley was assigned some of duties as well. See PExs13, 13a, p.2, 14, 14a, 14b, 15 p.4, Section VI, 15. Then after Plaintiff was RIF'd, some of plaintiff's engineering duties were assigned to Riley. See PEx6, Riley Dep. p. 88. They were also assigned to other engineers in her group as well. PExs 13-17 and 38-38a.

The AOD function before Brignole left the unit was performed by Hardy, Guyton and Pittman, members of Jones' engineering unit of which plaintiff and Riley were also members. Id.

**II. Only Plaintiff and another Black Engineer lost their jobs as Project Engineers under Sean Healy in the RIF**

Defendant argues that because only 4 of the 17 employees under Healy "affected" by the RIF were African American, the defendant did not discriminate against plaintiff. Plaintiff's point, however, is that only she and another black engineer, Melba Hassanen, under Healy, actually lost their engineering jobs, titles, grades and Memphis, Tennessee location. PEx11, para.13. They were not otherwise similarly situated to the four white "affected" employees so identified by defendant. PEx35, p. 1.  a) Jacqueline Walters was a coordinator, she retired; b) Chuck Hester was a process Improvement Advisor who was moved to Input Auditor; c) John Pongetti remained an engineer in an assignment in North Carolina, PEx11, para. 13-14; and  d) Andre Foster, a fairly new hire, was not in Healy's group. PEx1, para. 16 and 17; PEx 24[1] Defendant's explanation for its action regarding the plaintiff is thus seen to be shifting.

No white engineer lost his or her job.  Moreover, Healy compared plaintiff's purportedly low value, less critical job assignments to only those of Antonio Pittman, who also had low value assignments. See PEx2, Healy dep. p. 41, lines 5-15; p. 48, lines 2-8.  He said he chose to keep Pittman because Pittman had greater seniority.

**III. Sean Healy's Record establishes him to have engaged in practices of racially  discriminatory treatment toward black engineers.**

Vice President Sean Healy was responsible for the RIF which only adversely

---

[1] . Plaintiff was not on Healy's initial RIF list. PEx24.  The only engineer on that list for discharge initially was Melba Hassanen.  After the list was published, Healy added plaintiff's name to it.  PEx35 only identifies whites as RIFees allegedly similarly situated to plaintiff when the facts show otherwise, i.e., Hester- auditor; and Walters – retired.

3

affected two black engineers, plaintiff and Melba Hassanen. PEx 11. para.13. At the time of his action in April, 2009, he was under company directed corrective action plan. PEx 19. That corrective plan was made in response to Engineer Mike Odigie's complaint that Healy tended to devalue his work and that of black engineers in comparison to that of white engineers; and that he only hired white managers. This is further reflected by Healy's comparison of plaintiff's work with that of Pittman, both being of low value to the company. PEx10, para. 26. It is also established that Healy did not first offer management opportunity to internal black employees who were seeking promotion. Rather than hire internal black applicants according to company policy, Healy opened the management positions to external employee applicants and actually hired only white external managers including Kirsten King. Healy did not consider black internal applicant Lawrence Smith for a management position or even give Smith an interview for the position awarded to King. PEx11, para.16; PEx 5, Bates 7-1068; PEx26; and PEx9 paras. 4 and 7; and PEx10, para. 23.

Further, Healy chose from more than 50 plus engineers under his supervision to actually terminate only two, both of whom were black, plaintiff and Hassanen!

**IV. Defendant's Proffered Reasons for Plaintiff's RIF are pretextual**.[2]

The defendant proffers two essential reasons to establish a legitimate nondiscriminatory basis for its RIF of plaintiff. The first is that her work had the lowest value of all the engineers under Healy except for another black RIFee named Melba Hassanen. Plaintiff raises a genuine fact issue regarding the "low value" of plaintiff's job

---

[2]. The defendant does not offer an explanation for plaintiffs nonconsideration for the Business Strategist position, grade 29,other than that it was a decision by two African American employees from the Legal and HR departments.

4

assignment by showing that Healy tended to devalue the work of black engineers and was on a company corrective action plan for that reason. PEx19. The plan was in place at the time of his action in April, 2009. PEx19. Plaintiff's duties and assignments were not fully known by Healy at the time he chose to dismiss her as an engineer. PEx2, Healy dep. p.10, lines 10-12; p. 28, lines 10-21; p. 33, lines 10-14. A comparison of the written duties as reflected by the evaluations of plaintiff and Pittman show that plaintiff had far more duties and more important duties than Pittman. PEx38 and 38a and PEx13 and PEx13a.

On page 5 of Exhibit 38, plaintiff's areas of leadership included five things: 1) support of density team including coordination of IT activity, 2) AUTO DG support including interaction with the DG department, the IT group, training and operations, 3) control and enhancement of the departmental website including publishing all QAB's and TAB's, (4) ownership of the LIFT/Bump Boarding priority list and 5) ownership of JumpSeat access. Pittman's duties reflected in Exhibit 13, page 5 included three things: Circle of Excellence, AOD Audit back-up and Winterization P & P and committee. Any comparison of the two would result in the conclusion that plaintiff's job duties were far greater in number and importance than Pittman's. Healy later further diminished the importance of plaintiff's work and enhanced the importance of Pittman's when called on to explain their job functions. The areas of work assignments reportedly known by Healy did not jibe with their work assignments reflected by their evaluations. Thus, Healy's representations were false. This falsity is further magnified by Healy's tendency to devalue the work of those black employees under his supervision his supervision to their

5

detriment. This includes the plaintiff. See also PEx 9, para.5 and PEx10, Odigie affidavit, paras. 9 and 26.

The lack of credibility of Healy's explanation is reflected in the fact that he only considered and compared plaintiff's work to black engineer Antonio Pittman. The only conclusion that a jury could reach from these facts is that Healy tended to both devalue the work of black engineers and to only make comparisons between them rather than make comparisons between plaintiff and white employees such as Rachel Riley.

From the foregoing recitation of facts, it is clear that Healy did not know the job duties of the engineers, especially Pittman and plaintiff, and thus had no legitimate basis for comparing and taking adverse action toward plaintiff; b) he did not set forth in writing the full panoply of plaintiff's duties nor Pittman's; c) he falsely stated that Pittman's work was more critical and of greater value of greater value than plaintiff's; and d) he kept her engineering duties and reassigned them to the team of which Riley was a member.  Plaintiff submits that no reasonable person by any stretch of the imagination could arrive at Healy's conclusion that plaintiff's assignments were lower in value or less critical to the company than the other engineers including Pittman and thus that her position rather than her work was to be eliminated.

Defendant's second proffered reason for its action is also pretextual, i.e., the statistics establish that far more white employees were affected by the RIF than black employees. As argued, defendant's position is semantic. "Affected" is one thing; "terminated" from one's title, job grade, and city of employment is another. Plaintiff has pointed out, supra., that only she and Hassanen actually lost their jobs as engineers in Healy's group. The only white engineer "affected" was John Pongetti who was retained

6

and relocated to North Carolina as a project engineer. PEx 11, para.14. The only white engineer manager affected was Richard Wooten, group manager under Healy. He, too, was "affected"' but he was simply relocated by defendant to Chicago in the same position. Neither comparison proffered by defendant changes the fact that plaintiff and Hassanen were the only project engineers "affected" who lost their jobs, title, pay and location of employment.

## Argument

A.  Rule 56 of the Federal Rules of Civil Procedure govern motions for summary judgment. The court must determine the facts pursuant to Rule 56c of the Federal Rules of Civil Procedure, on the papers, and without regard to witness credibility. *Anderson v. Liberty Lobby, 477 U.S. 242, 249.* Here the defendant and the plaintiff have presented facts which show the existence of a material factual dispute regarding whether plaintiff was discriminated against when she was riffed from her position in April, 2009. The evidence on which plaintiff relies is set forth in summary fashion, supra, per the court's instructions. Plaintiff cites the following cases for the proposition that an employer can not avoid liability by verbage or by changing job titles or making minor changes in their description of a plaintiff and a comparator to plaintiff in order to avoid liability. *Hunter v. City of Copperhill, TN, Case No. 1-09CV238 U.S. D.C. E.D. Tenn. at Chattanooga (November 29, 2011) quoting Dennis v WhiteWay Cleaners LP, 119 SW 3rd 697 (10 Ct. of Appeals 2003) citing Barnes v GenCorp, Inc. 897 F. 2nd 1457 (6th Cir.1990). See Slip opinion, page 8*.

B.  Defendant did not follow appropriate nondiscriminatory RIF standards when it took plaintiff's engineering job away from her and when it refused to consider for the Business Strategist's position in May, 2009.  With respect to the first position, she was similarly situated to a white engineer, Rachel Riley in all relevant aspects of her employment.  Yet Riley was kept while plaintiff was terminated as an engineer.  Plaintiff cites *Ercegovich v. Goodyear Tire and Rubber Co., 154 F.3rd 344 (6th Cir. 998) (citing Mitchell v Toledo Hospital, 964 f 2nd 577 (6th Cir. 1992)* for this proposition.  Because of the relative qualifications of Riley and plaintiff, and the company's RIF plan which advanced the criterion of seniority where persons were of the same job family, plaintiff should have been the person retained rather than Riley.  Indeed, the duties assigned to junior engineer Riley could have been assigned to anyone in the group as had occurred before Teresa Brignole left the unit.

C.  Plaintiff acknowledges that a "heightened standard" applies to RIF cases. *Mynatt v. Lockheed Martin, 271 Fed Appx. 470 (6th Cir. 2009)*  The facts in this case are materially different from those in *Mynatt*.   Plaintiff and Riley are in the same job family which was otherwise the case in *Mynatt.* Healy's approach differed because plaintiff and Riley's s qualifications and job duties placed them in the same job family with the same functions.  Common sense applies here. For if it is the work to be displaced, then the issue is to be otherwise analyzed at which point seniority under this company's rules becomes the most important factor. See PEx 37.  In Mynatt, the employer had an understandable RIF policy; here Healy and RIF overseer Bennett have a dispute about what RIF considerations apply.  Bennett declared that the process required identification of less critical <u>positions</u> rather than work assignments which would in turn trigger another

step or two in order to ensure that senior employees like plaintiff would not be dismissed by junior less qualified employees such as Riley. See PEx 3a, Bennett dec. para. 7.  See also *Welborn v Shelby Co. Gov., 10- 2528-STA-cgc (WD Tenn, November 28, 2011)* at p. 17; Guiger v Tower Auto, 579 F 3rd 614, 622 (6th Cir. 2009).  Healy did not take the second or third step because he understood he was not to consider individuals, only their assignments.  The fallacy of his assertion is that Riley and plaintiff both had positions as project engineering specialists or senior engineering specialists with assignments which could be changed at will.  Accordingly, Riley had a specific position as engineering specialist grade 24 and plaintiff had a specific position as project engineering specialist grade 27.  Healy's attempt to describe Riley's work assignment as more important than plaintiff's does not change the fact that both of them were engineering specialist with plaintiff only having the greater experience and job classification number.

     D.  Defendant's reasons for discharging plaintiff as an engineer are pretextual. Defendant says that plaintiff's work had the lowest value and was otherwise less critical to the engineering function. Plaintiff submits that the proffered reason is false, did not actually motivate the defendant's decision and within the context of the RIF was insufficient to warrant plaintiff's discharge as an engineer.  *Dewes v A.A. Dick Co., 231 F. 3rd 1016, 1021 (6th Cir. 2000).*  At this stage, pretext is a "common sense inquiry" where plaintiff needs only to produce evidence from which the jury could reasonably doubt the employer's explanation.  *Chen v Dow Chemical Co., 580 F. 3rd 394, 400* . Healy's explanation is suspect because of the more than 50 engineers in his division.  He only terminated as engineers two of  them.  Both were black.  He applied seniority, but only between plaintiff and another black employee, Pittman.  Pittman's seniority was

greater than plaintiff while Riley's was less. Healy did not know what the employees did, he speculated causing the reasonable inference that he do so in order to validate or justify his discriminatory action regarding plaintiff.  Healy relied upon Kirsten King for providing the rationale for hiring Riley and for determining her work to be more "critical" than plaintiff's.  Of the three people he was called upon to discuss, Pittman and plaintiff's work was the least important while Riley, the new hire, less and lower grade employee allegedly had the unit's most important work.

      H.  Healy's past practice of racial treatment toward plaintiff and black employees establishes him to be a racial discriminator.  At the time he was mentally exploring his RIF options regarding plaintiff and Hassanen in March and April, 2009, Healy was operating under a corrective action plan as a consequence of complaints of racial treatment from African American engineers that he devalued the work of black engineers and lauded the work of white engineers.  With such a mindset, a RIF occasion allowed Healy an opportunity to discriminate against plaintiff and other black engineers whose engineering work he devalued and defined as "low value" or "less critical".  Healy's mental judgments were subjective based upon presumption and pitted plaintiff against Pittman within a context that the only other engineer he discharged was Hassanen.  Not one white engineer under his supervision was adversely affected economically.  Then defendant told court that "all of plaintiffs duties were reassigned to other employees." Def brief, p.4.  This confirms that defendant RIF'd plaintiff from her duties rather than her position.  By removing and transferring her duties, defendant eliminated plaintiff's position.

10

## CONCLUSION

Plaintiff has presented a prima facie case of employment discrimination with respect to race as announced in *McDonald Douglas v. Green*, 411 U.S. 792 (1973) with respect being removed as an engineer and by not being considered for a new position by defendant.  Her evidence is sufficient to meet the "heightened" standards articulated by the Sixth Circuit in many RIF cases and to otherwise meet the requirements of *Green*.  1. Plaintiff Broadway is an African American citizen who is a member of  a protected class. 2) Plaintiff was qualified for the work she was performing as well as for the Business Strategist position.  3) Plaintiff was subjected to adverse employment action, i.e., she was removed from her job assignment as an engineer, grade 27 and reassigned to a lower graded 26 position in another city outside engineering. 4) She has presented evidence which shows that she was singled out for impermissible reasons.  *Guiger v. Tower Auto*, 579 F.3d. 614,622 (6th Cir. 2009); *Stovall v. Settle, et al*. No. 10-2388-STA-dkv, (W.D. Tenn., Nov. 18, 2011); she was not allowed to compete for the Business Strategist position while a white person also being riffed was allowed to do so.

 The Defendant has set forth reasons for its actions which it claims to be legitimate and non-discriminatory while also controverting Plaintiff's evidence that establishes that plaintiff has made a prime facie case of employment discrimination. Plaintiff has cast doubt upon the legitimacy of defendant's rationale for its adverse actions toward plaintiffs.

Plaintiff has presented in its totality evidence from which the Court (jury) may conclude that the Defendant's explanations are either false, unbelievable and otherwise pretextual.

Plaintiff's evidence establishes that more likely than not race was a factor in the Defendant's decision to RIF her and to otherwise take adverse action against her with respect to her employment.

Because Plaintiff has both presented her own Statement of Material Undisputed facts and has controverted in detail Defendant's Statement of Material Undisputed Facts, she has established that there are clear and genuine issues of material fact that exist regarding Plaintiff's race claims such that the Court should deny Defendant's Motion for Summary Judgment

WHEREFORE, Plaintiff prays that the Defendant's Motion for Summary Judgment should respectfully be denied.

>Respectfully submitted,
>
>/s/ John W. Walker
>John W. Walker
>JOHN W. WALKER, P.A.
>1723 Broadway
>Little Rock, Arkansas 72206
>501-374-3758 (telephone)
>501-374-4187 (facsimile)
>Email: johnwalkeratty@aol.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May, 2012, a true and correct copy of the foregoing was filed and served electronically with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>John W. Campbell (BPR 16017)
>Senior Counsel
>Federal Express Corp.
>3620 Hacks Cross Road,
>Building B, 2nd Floor
>Memphis, Tennessee 38125
>Telephone: (901) 434-8403
>Facsimile: (901) 434-9279

Email:  jwcampbell@fedex.com


/s/ John W. Walker