United States District Court
Western District of Tennessee

**Gertrude Anita Broadway**                                           **Plaintiff**

v.                     Case No. 2:10-cv-02898-AJT-tmp

**Federal Express Corporation**                                        **Defendant**

## Amended Complaint

### Parties

1. The Plaintiff, Gertrude Anita Broadway ("Ms. Broadway"), is a natural person who resided primarily in Memphis, Tennessee during the times relevant to this cause of action. Ms. Broadway is a black female.

2. The Defendant, Federal Express Corporation ("Federal Express"), is a for-profit corporation incorporated in the State of Delaware. Federal Express's principal place of business is 3610 Hacks Cross Road, Memphis, Tennessee 38125-8800. Federal Express's registered agent is C T Corporation System, 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929-2021.

### Subject Matter Jurisdiction

3. This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, specifically 42 U.S.C. §§ 1981, 2000e-2(a)(1), 2000e-2(a)(2), 2000e-3(a), and 2000e-5(f)(1).

### Personal Jurisdiction

4. This Court has personal jurisdiction over Federal Express because at all times relevant to his cause of action, Federal Express had continuous and systematic contacts with the State of Tennessee that are sufficient to justify the State's exercise of judicial power with respect to any and all claims Ms. Broadway may have against Federal Express. *Int'l Shoe Co. v. Washington*, 316 U.S. 310, 317 (1945) (citations omitted).

### Venue

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Ms. Broadway's claims against Federal Express occurred in the Western District of Tennessee.

## I.     Factual Basis for the Complaint

6. Ms. Broadway is a college graduate who went to work for Federal Express in 1997 as an engineer. In 2006, she worked as a project engineer specialist under the supervision of Manoocher Hakimi ("Mr. Hakimi"). Mr. Hakimi reported to Sean Healy ("Mr. Healy").

7. On February 23, 2006, Mr. Hakimi issued a written review of Ms. Broadway's performance. The review scored employees' performance on a scale of 1.0 to 4.0. Mr. Hakimi gave Ms. Broadway a 1.7 out of 4.0. Ms. Broadway considered her score to be based on racially discriminatory reasons, so she filed a "complaint" through Federal Express's Guaranteed Fair Treatment Procedure ("GFT"). The purpose of the GFT procedure is to allow employees to seek review of actions taken by management, including disciplinary actions and performance reviews.

8. On March 10, 2006, Ms. Broadway met with Mr. Healy and requested that she be supervised by someone other than Mr. Hakimi. Mr. Healy rejected her request.

9. On March 13, 2006, Federal Express determined that the 1.7 score was not warranted, therefore, it ordered that the score be removed from her employment record.

10. On March 29, 2006, Ms. Broadway filed a second GFT complaint because Mr. Hakimi continued to treat her in a racially discriminatory fashion. She also alleged that he retaliated against her for having his February 23, 2006 performance review of her expunged. In this same complaint, Ms. Broadway alleged that Mr. Healy discriminated against her on the basis of race.

11. Because she accused Mr. Hakimi of retaliation, her GFT complaint was converted into an Internal Equal Employment Opportunity ("IEEO") complaint. The purpose of the IEEO procedure is to allow employees to raise claims of discrimination or retaliation.

12. Because Mr. Healy had been named in the IEEO complaint, he was not involved in Federal Express's investigation of the complaint. On May 22, 2006, Mike Macyauski ("Mr. Macyauski") issued a report concluding that no violation of company policy had occurred.

13. Following Mr. Macyauski's May 22, 2006 report, Mr. Healy moved Ms. Broadway from Mr. Hakimi's supervision to William Jones's ("Mr.

Jones") supervision. Ms. Broadway worked under Mr. Jones's supervision until April 2009 without incident.

14. In February 2008, Mr. Healy approved the promotion of Rachel Riley ("Ms. Riley"), a white female, from operations manager in a non-engineering unit of Federal Express to a position as a senior engineering specialist. At the time, Ms. Broadway was a project engineer specialist. The jobs of senior engineering specialist and project engineer specialist are in the same classification within Federal Express.

15. Mr. Healy approved Ms. Riley's promotion to senior engineering specialist without reviewing her qualifications for the position.

16. In March 2008, Federal Express promoted Mr. Healy to the position of vice-president. As a vice-president, he directly supervised Kirsten King ('Ms. King"), who in turn directly supervised Mr. Jones.

17. In June 2008, Federal Express retained the services of a consulting firm to assist it in finding ways to reduce costs. In November 2008, Federal Express eliminated the jobs of 5,000 hourly employees and instituted a plan to consolidate some jobs and eliminate others. Bob Bennett ("Mr. Bennett"), another Federal Express vice-president, led the decision making process with respect to which jobs to consolidate and which jobs to eliminate. Mr. Healy also participated in this process.

18. Mr. Healy did not develop or use any written criteria to guide his decisions on which jobs to consolidate or eliminate, nor did he conduct an individual assessment of the performances of persons performing the jobs he would consolidate or eliminate. Instead, he determined on an ad hoc, subjective basis what jobs would be eliminated or consolidated.

19. Before deciding what jobs to eliminate or consolidate, Mr. Healy knew that at least five black engineers under his supervision had lodged complaints against him asserting claims that he subjected them to racial discrimination. By way of contrast, no white engineer had ever lodged such a complaint.

20. Although he was going to consolidate some engineering jobs and eliminate others, Mr. Healy did not know and could not describe the work of the engineers under his supervision.

21. Mr. Healy ultimately identified the following positions in Mr. Jones's group for elimination: (1) web support for ramp engineering; (2) the density project; (3) the automation of dangerous goods project; and (4) the

3

winter operations manual project. Ms. Broadway's duties included but were not limited to: web support for ramp engineering; the density project; the automation of dangerous goods project; and the "lift/bump priority list" project. Mr. Jones assigned the foregoing tasks to Ms. Broadway.

22. Mr. Healy decided to eliminate Ms. Broadway's position, and on April 4, 2009, she received notice of that decision. Mr. Healy told Ms. Broadway that her pay and benefits would continue until May 31, 2009.

23. Mr. Healy also decided to eliminate the job held by another black, female engineer, Melba Hassenen ("Ms. Hassenen"). Before he made the decision to fire Ms. Broadway and Ms. Hassenen, Mr. Healy's supervisors took a "corrective action" against him because of his prior racially discriminatory treatment of black employees.

24. Notwithstanding the elimination of her position, Ms. Broadway still wanted to work for Federal Express as an engineer and still wanted to work in Memphis, Tennessee. She applied for several engineering vacancies within Federal Express that were located in Memphis and was rejected for each of them. While she was seeking alternative employment with Federal Express, Mr. Healy knew there was a vacancy for the position of project engineering specialist, which was the very job she held when Mr. Healy fired her. Instead of offering that position to Ms. Broadway, Mr. Healy offered it to a white male, Bruce Houston ("Mr. Houston").

25. Mr. Healy replaced Ms. Broadway with Ms. Riley, who previously worked as an operations manager in a non-engineering unit of Federal Express. Ms. Riley had worked for Federal Express for less time than Ms. Broadway and was objectively less qualified than Ms. Broadway to do engineering work. Despite Ms. Riley having less time on the job and being objectively less qualified than Ms. Broadway, Mr. Healy made sure that Ms. Riley was not adversely affected by Federal Express's decision to consolidate some jobs and eliminate others. Additionally, Mr. Healy promoted Ms. Riley without following Federal Express's established procedures for promoting employees.

26. After Mr. Healy named Ms. Riley as her replacement, Ms. Broadway filed an IEEO complaint alleging that the decision to eliminate her job was racially discriminatory as well as retaliatory for her challenging Federal Express's racially discriminatory practices.

27. Federal Express made a finding that no violation of company policies occurred; however, Mr. Healy and Mr. Jones admitted that Ms. Riley

4

lacked the requisite qualifications for the job of senior engineer specialist, and thereafter changed her "grade" from a 27, which was Ms. Broadway's grade before Mr. Healy fired her, to a 24. Although Mr. Healy lowered Ms. Riley's grade to reflect her lack of qualifications for a grade 27 position, she continued to be compensated as a grade 27 senior engineer specialist.

28. On or about May 22, 2009, Federal Express announced it had an opening for a grade 29 business strategist position. Ms. Broadway was qualified for and sought that position. On May 29, 2009, Federal Express stopped seeking applicants for the position, and shortly thereafter, selected Todd Tribal ("Mr. Tribal"). Mr. Tribal is a white male. Like Ms. Broadway, Mr. Tribal's position had been selected for elimination, but Federal Express saw to it that he landed a better paying job with more prestige and responsibilities.

29. Mr. Bennett selected Mr. Tribal for the business analyst position after interviewing him. Mr. Bennett did not interview Ms. Broadway even though company policy dictated that interviews were to be granted on the basis of seniority. At the time Ms. Broadway sought the business analyst position, she had worked for Federal Express for twelve years whereas Mr. Tribal had worked for the company for seven years.

30. In May 2009, Ms. Broadway accepted a position as an operations support specialist with Federal Express that required her to relocate from Memphis to Albuquerque, New Mexico. She worked in Albuquerque from June 2009 to August 2009.

31. In July 2009, Ms. Broadway sought and obtained a position as an engineering specialist with Federal Express in Memphis. The Memphis position, however, pays less than the position she had in Albuquerque. She remains employed with Federal Express as a grade 24 engineering specialist, which is the same job she had when she went to work for the company in 1997.

32. On July 9, 2009, Ms. Broadway filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). A copy of that charge is attached as Exhibit A. On October 5, 2010, Ms. Broadway received a notice of suits rights from the EEOC, and this cause of action is being filed within ninety days of her receipt of that notice.

## II. Race Discrimination Claims Under 42 U.S.C. § 1981

33. On February 23, 2006, Mr. Hakimi gave Ms. Broadway a negative performance review that Federal Express ultimately vacated. That review was based on racially discriminatory reasons, was an adverse employment act, and violated Ms. Broadway's statutory right to make and enforce employment contracts on a non-racially discriminatory basis. 42 U.S.C. §§ 1981(a), (b), (c).

34. Mr. Healy fired Ms. Broadway and replaced her with Ms. Riley for racially discriminatory reasons. This was an adverse employment act that violated Ms. Broadway's statutory right to make and enforce employment contracts on a non-racially discriminatory basis. 42 U.S.C. §§ 1981(a), (b), (c).

35. Mr. Bennett selected Mr. Tribal for the position of business strategist rather than Ms. Broadway for racially discriminatory reasons. This was an adverse employment act that violated Ms. Broadway's statutory right to make and enforce employment contracts on a non-racially discriminatory basis. 42 U.S.C. §§ 1981(a), (b), (c).

## III. Retaliation Claims Under 42 U.S.C. § 1981

36. When Federal Express vacated Mr. Hakimi's February 23, 2006 review, he continued to discriminate against Ms. Broadway on the basis of race as retaliation for her challenging his discriminatory practices. This was an adverse employment act that violated Ms. Broadway's statutory right to challenge discriminatory practices in the workplace and not be retaliated against for doing so. *CBOCS W., Inc. v. Humphries*, 552 U.S. 442 445-457 (2008) (42 U.S.C. § 1981 encompasses retaliation claims).

37. Mr. Healy fired Ms. Broadway and replaced her with Ms. Riley as retaliation for Ms. Broadway naming him in her March 29, 2006 GFT complaint. This was an adverse employment act that violated Ms. Broadway's statutory right to challenge discriminatory practices in the workplace and not be retaliated against for doing so. *Humphries*, 552 U.S. at 445-457.

38. Mr. Bennett selected Mr. Tribal for the position of business strategist rather than Ms. Broadway as retaliation for Ms. Broadway filing a GFT complaint against Mr. Hakimi in 2006, a GFT complaint against Mr. Hakimi and Mr. Healy on March 29, 2006, and a 2009 IEEO complaint against Mr. Healy. This was an adverse employment act that violated Ms. Broadway's statutory right to challenge discriminatory practices in the

workplace and not be retaliated against for doing so. *Humphries*, 552 U.S. at 445-457.

### IV. Race Discrimination Claims under Title VII

39. Mr. Hakimi's February 23, 2006 negative performance review of Ms. Broadway was based on racially discriminatory reasons. This was an adverse employment act that violated her statutory right not to be discriminated against with respect to her compensation, terms, conditions, or privileges of employment because of her race. 42 U.S.C. § 2000e-2(a)(1).

40. The racially tinged performance review also violated Ms. Broadway's statutory right not to be limited, segregated, or classified in any way that would deprive or tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee because of her race. 42 U.S.C. § 2000e-2(a)(2).

41. Mr. Healy fired Ms. Broadway and replaced her with Ms. Riley for racially discriminatory reasons. This was an adverse employment act that violated Ms. Broadway's statutory right not to be discriminated against with respect to her compensation, terms, conditions, or privileges of employment because of her race. 42 U.S.C. § 2000e-2(a)(1).

42. Mr. Healy's firing Ms. Broadway and replacing her with Ms. Riley for racially discriminatory reasons violated Ms. Broadway's statutory right not to be limited, segregated, or classified in any way that would deprive or tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee because of her race. 42 U.S.C. § 2000e-2(a)(2).

43. Mr. Bennett selected Mr. Tribal for the position of business strategist rather than Ms. Broadway for racially discriminatory reasons. This was an adverse employment act that violated Ms. Broadway's statutory right not to be discriminated against with respect to her compensation, terms, conditions, or privileges of employment because of her race. 42 U.S.C. § 2000e-2(a)(1).

44. Mr. Bennett's selection of Mr. Tribal instead of Ms. Broadway for racially discriminatory reasons violated Ms. Broadway's statutory right not to be limited, segregated, or classified in any way that would deprive or tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee because of her race. 42 U.S.C. § 2000e-2(a)(2).

## V. Retaliation Claims under Title VII

45. After Federal Express vacated Mr. Hakimi's February 23, 2006 review, he continued to discriminate against Ms. Broadway on the basis of race as retaliation for her challenging his discriminatory practices. This was an adverse employment act that violated Ms. Broadway's statutory right to challenge discriminatory practices in the workplace and not be retaliated against for doing so. 42 U.S.C. § 2000e-3(a).

46. Mr. Healy fired Ms. Broadway and replaced her with Ms. Riley as retaliation for Ms. Broadway naming him in her March 29, 2006 GFT complaint. This was an adverse employment act that violated Ms. Broadway's statutory right to challenge discriminatory practices in the workplace and not be retaliated against for doing so. 42 U.S.C. § 2000e-3(a).

47. Mr. Bennett selected Mr. Tribal for the position of business strategist rather than Ms. Broadway as retaliation for Ms. Broadway filing a GFT complaint against Mr. Hakimi in 2006, a GFT complaint against Mr. Hakimi and Mr. Healy on March 29, 2006, and a 2009 IEEO complaint against Mr. Healy. This was an adverse employment act that violated Ms. Broadway's statutory right to challenge discriminatory practices in the workplace and not be retaliated against for doing so. 42 U.S.C. § 2000e-3(a).

## VI. Relief Requested

48. Ms. Broadway requests that the Court enjoin Federal Express from engaging in any further racial discrimination or retaliation against her. 42 U.S.C. § 2000e-5(g)(1).

49. Ms. Broadway requests that the Court order that she be instated to the position of business strategist with retroactive seniority and backpay or the position of senior engineer specialist with retroactive seniority and back pay. 42 U.S.C. § 2000e-5(g)(1). The backpay award should include lost wages, raises, overtime compensation, bonuses, vacation pay, and retirement benefits. *United States v. Burke*, 504 U.S. 229, 237-242 (1992). If at the time of judgment there is no opening for the position of business strategist or senior engineer specialist, Ms. Broadway requests that the Court award her front pay until such an opening occurs. *Shore v. Fed. Express Corp.*, 42 F.3d 373, 378 (6th Cir. 1994).

50. As an alternative to instatement to the position of business strategist or senior engineer specialist, Ms. Broadway requests that the Court order Federal Express to reinstate her to the position of project engineer specialist with retroactive seniority and back pay. 42 U.S.C. § 2000e-5(g)(1). The backpay award should include lost wages, raises, overtime compensation, bonuses, vacation pay, and retirement benefits. *Burke*, 504 U.S. at 237-242. If at the time of judgment there is no opening for the position of project engineer specialist, Ms. Broadway requests that the Court award her front pay until such an opening occurs. *Shore*, 42 F.3d at 378.

51. Ms. Broadway requests an award of compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. 42 U.S.C. §§ 1981a(a)(1), 1981a(b)(3).

52. Ms. Broadway requests an award of punitive damages because Federal Express engaged in discriminatory practices with malice or with a reckless indifference to her federally protected rights. 42 U.S.C. §§ 1981a(b)(1), 1981a(b)(4).

53. Ms. Broadway requests an award of pre-judgment interest and post-judgment interest at the maximum rate allowed by law. *Loeffler v. Frank*, 486 U.S. 549, 557-558 (1988).

54. Ms. Broadway requests that she be awarded her costs of prosecuting this case, including attorneys' fees. 42 U.S.C. §§ 1988(b), 1988(c), 2000e-5(k).

55. Ms. Broadway requests that the Court award her other equitable relief the Court deems appropriate. 42 U.S.C. § 2000e-5(g)(1).

## VII.  Jury Demand

56. Ms. Broadway demands a trial by jury. 42 U.S.C. § 1981a(c)(1).

        Respectfully submitted,

        <u>/s/ John W. Walker</u>
        John W. Walker
        Ark. Sup. Ct. Reg. No. 64046
        John W. Walker, P.A.
        1723 Broadway Street
        Little Rock, Arkansas 72206-1220
        Telephone (501) 374-3758
        Facsimile (501) 374-4187
        Email johnwalkeratty@aol.com

## Certificate of Service

John W. Walker, the attorneys for the Plaintiff, Gertrude Anita Broadway, certifies that on November 19, 2012 he filed this AMENDED COMPLAINT using the Court's CM/ECF system, which will send notice of the filing to:

John W. Campbell
Senior Counsel
Federal Express Corporation
3620 Hacks Cross Road
Building B, 2d Floor
Memphis, Tennessee 38125-8800

<u>/s/ John W. Walker</u>
John W. Walker

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TENNESSEE

GERTRUDE ANITA BROADWAY )
 )
           PLAINTIFF, )  CASE NO._____
 )
vs. )
 )
 )
FEDERAL EXPRESS, )
A Corporation )
               DEFENDANT )

## COMPLAINT

### Jurisdiction

1. Jurisdiction is pursuant to 28 U.S.C. § 1343 and 42 U.S. C. § 2000(e), et seq. Relief is being sought pursuant to 42 U.S.C. § 2000(e), et seq.

2. Plaintiff Gertrude "Anita" Broadway is a United States citizen of African American descent. She resides in Memphis, Tennessee. She brings this action in order to redress acts of discrimination due to race or color.

3. The defendant Federal Express, Inc. is a corporation whose principal place of business is Memphis, Tennessee. The defendant is being sued for acts undertaken on its

1

behalf by its management staff which plaintiff believes violates her rights as set forth in Title VII of the 1964 Civil Rights Act.

4. Plaintiff seeks a declaratory judgment, injunctive and equitable relief and monetary damages as authorized by Title VII of the 1964 Civil Rights Act.

5. Plaintiff filed a timely charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC). See Exhibit A. This action is being filed within 90 days of plaintiff's receipt of Notice of Right to Sue from the EEOC. The allegations set forth in her charge are adopted by reference.

6. Plaintiff is a college graduate who was hired by defendant in 1997 as a grade 24 in the defendant's engineering department. She was progressively promoted to a grade 27 senior engineering position. Her employment record was exemplary until 2006.

7. In 2006, plaintiff experienced what she perceived to be discriminatory treatment from her Federal Express supervisor. The supervisor, according to plaintiff's Guaranteed Fair Treatment Procedure (GFTP) complaint, did not believe that African American female employees were capable to performing the same technical work at the same level as Caucasian male employees. Pursuant to company procedure, plaintiff filed a grievance under the company's process for that action, the "GFTP." The grievance was reversed at the Vice President's level for the engineering section in favor of the plaintiff.

8. After plaintiff's grievance was ultimately resolved in her favor, her superiors created and thereafter maintained a hostile work environment for her.

9. In 2009 while still under the supervision and direction of the Director who was ultimately promoted to Vice President, plaintiff was informed by her supervisor that her position was being eliminated due to a reduction in force. Plaintiff was presented with

the choice to either a buy-out or to be selected for a position in Albuquerque, New Mexico. Although the reduction in force was a corporate decision, plaintiff's Vice President was a decision maker regarding the employment decisions for plaintiff's department. Plaintiff was the only employee forced to relocate in her immediate group. While under the supervision and control of the Vice President, the other employees within her group were not affected.

10. In relocating plaintiff, the defendant retained in the Memphis office a Caucasian employee of considerably less experience and tenure. The relocation caused plaintiff great personal and family hardship which she would not have experienced but for her grievance and her race.

11. Due to plaintiff's personal and family circumstances, which were made known to defendant by the plaintiff, plaintiff was forced to return to her entry grade level 24 position which she held in 1997. The Caucasian female who was retained by defendant was afforded more favorable treatment than plaintiff by defendant.

12. The aforestated adverse treatment by defendant toward plaintiff has caused her to suffer loss of pay, loss of status, constructive demotion, embarrassment, loss of promotional opportunity and monetary damages. Plaintiff has no adequate remedy at law by which to redress the wrongs set forth herein other than this action authorized by Title VII of the Civil Rights Act of 1964. That act authorizes the relief sought herein and monetary damages of $300,000 for which she prays.

WHEREFORE, plaintiff prays that this matter be set for trial by jury on the liability and damages issues and that the court thereafter enter judgment for plaintiff as follows:

a) a declaratory judgment which favors plaintiff;

b) injunctive relief which requires defendant to cease its discriminatory and retaliatory conduct toward plaintiff;

c) equitable relief including loss of pay, benefits and other emoluments of employment which she would enjoy but for the conduct of defendant; and

d) compensatory damages in the sum of $300,000.

Plaintiff further prays that she be awarded such further, other or appropriate alterative relief as the Court sees fit to grant as well as her costs and reasonable counsel fees as authorized by 42 U.S.C. § 1988.

Respectfully submitted,

*John W. Walker*
John W. Walker – AR Bar 64046
JOHN W. WALKER, P.A.
1723 Broadway
Little Rock, Arkansas 72206
501-374-3758
501-374-4187 (facsimile)
email: johnwalkeratty@aol.com

Date: December 15, 2010

4

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>490-2009-02357 |
|---|---|---|

Tennessee Human Rights Commission and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Gertrude A. Broadway | (901) 398-4844 | 07-05-1958 |

Street Address: 1704 David Drive, Memphis, TN 38116

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| FEDEX EXPRESS | 15 - 100 | (901) 224-3513 |

Street Address: 2828 Business Park Drive, Building H, Suite 100, Memphis, TN 38118

**EXHIBIT A**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 04-04-2009  Latest: 04-04-2009
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was notified April 4, 2009, that my position as a Project Engineer Specialist was being eliminated and I was offered a position of Operations Support Specialist in New Mexico.

I was the only engineer in my work group whose job was eliminated and a less qualified Caucasian female was retained in the position of Senior Engineer Specialist, a position in the same classification as my position of Project Engineer Specialist.

I believe that I was discriminated against and my position chosen for elimination because of my race, African American and in retaliation for me having filed an internal complaint of discrimination in 2006, against my former Managing Director, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Jul. 09, 2009
Date — Charging Party Signature

RECEIVED JUL 09 2009

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

Gertrude Anita Broadway 7/9/09
SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)
7-09-09 Dwight Jackson