IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| GERTRUDE ANITA BROADWAY, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2:10-cv-02898-JPM-tmp |
| FEDERAL EXPRESS, | ) ) | |
| Defendant. | ) ) | |

ORDER GRANTING DEFENDANT FEDERAL EXPRESS'
MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Federal Express Corporation's ("FedEx") Motion for Summary Judgment, filed December 13, 2011. (ECF No. 27.) For the reasons stated below, FedEx's Motion for Summary Judgment is GRANTED.

I.    BACKGROUND

A.    Procedural History

This is an action for race discrimination and retaliation brought pursuant to Title VII of the Civil Rights Act of 1964.

On December 15, 2010, Plaintiff Gertrude Anita Broadway ("Broadway") filed a Complaint "to redress acts of discrimination due to race or color." (Compl. ¶ 1, ECF No. 1.) Chief Judge McCalla was assigned. (ECF No. 2.) On April 8, 2011, Defendant Federal Express filed an Answer. (ECF No. 6.)

On December 13, 2011, Defendant filed the instant Motion for Summary Judgment. (ECF No. 27.) On January 16-17, 2012,

Plaintiff filed her Response.  (ECF Nos. 35-39.)  On January 30, 2012, Defendant filed its Reply.  (ECF No. 42.)

Judge Tarnow was added as presiding judge on February 22, 2012, and Chief Judge McCalla was no longer assigned.  (ECF No. 47.)  On March 1, 2012, a video status conference was held.  (ECF No. 49.)  Judge Tarnow held a video motion hearing on Defendant's Motion for Summary Judgment on April 18, 2012.  (ECF No. 52.)  The Court ordered the parties to "prepare a 3-4 page case summary and to engage in mediation/settlement negotiations."  (Id.)  Plaintiff was also ordered to resubmit her Response.  (Id.)  On May 2, 2012, Plaintiff refiled her Response.  (ECF Nos. 58, 59.)

Also on May 2, 2012, Plaintiff filed a Motion for Leave to Amend Complaint to include a failure-to-promote claim.  (ECF No. 61 ("The amendment deadline was June 5, 2011, while the fact that a white male received the Business Strategist position was not revealed until a deposition held on November 14, 2011, the discovery deadline."); see also ECF Nos. 60, 62-63, 65.)

On May 3, 2013, Defendant moved to strike Plaintiff's revised Response (ECF Nos. 58, 59, 63) to Defendant's Motion for Summary Judgment (ECF No. 27).  (ECF No. 64.)

On May 9, 2012, the parties filed a Joint Request for Referral to Magistrate Judge for Settlement Conference (ECF No. 66), which the Court granted on May 11, 2012 (ECF No. 67).

On May 16, 2012, Defendant filed its Response in opposition to Plaintiff's Motion for Leave to Amend Complaint. (ECF No. 69.)

On May 21, 2012, the status conference set before the Magistrate was cancelled (ECF No. 74) and a status conference with Judge Tarnow was held, discussing settlement possibilities (ECF No. 75).

On September 27, 2012, Judge Tarnow entered an Order administratively terminating Defendant's Motion for Summary Judgment without prejudice. (ECF No. 77.) On September 28, 2012, Defendant filed a Motion for Clarification or, in the Alternative, for Reinstatement (ECF No. 79), which the Court granted on October 10, 2012 (ECF No. 80).

On November 20, 2012, Plaintiff filed an Amended Complaint (ECF No. 82) without leave of Court, which Defendant moved to strike on November 30, 2012 (ECF No. 83). On December 4, 2012, Defendant filed an Answer to Plaintiff's Amended Complaint. (ECF No. 84.) On December 5, 2012, Plaintiff filed a Motion to Withdraw Amended Complaint. (ECF No. 85.) Plaintiff's Motion to Withdraw "move[d] that the Court allow her to withdraw the Amended Complaint . . . filed on November 20, 2012, and substitute Plaintiff's Proposed Amended Complaint that was attached to the Motion for Leave to Amend Complaint [(ECF No. 60)]." (Id.)

Nearly a year later on November 12, 2013, the Court filed
an Order to Show Cause why the case should not be dismissed for
lack of prosecution. (ECF No. 86.) The Court found that
"[a]fter a March 2012 conference, the Court took the Motion [27]
under advisement. Plaintiff counsel has been unresponsive to
the Court's attempts to schedule a hearing on Defendant's Motion
[27]." (ECF No. 86.)

On November 20, 2013 and November 25, 2013, Plaintiff filed
responses to the Court's order. (ECF No. 87-88.) Counsel for
Plaintiff noted that "counsel was diagnosed in December, 2012
with lung cancer and has received chemotherapy treatments for
same." (ECF No. 87 ¶ 2.)

On March 28, 2014, the Court entered an order granting
Plaintiff's Motion to Withdraw (ECF No. 85) the Amended
Complaint (ECF No. 82) and "direct[ing Plaintiff] to file the
amended complaint for which she received leave of court." (ECF
No. 89 at 1.) Defendant's Motion for Summary Judgment was
administratively terminated without prejudice (Id.)

On May 13, 2014, Judge McCalla was added as presiding
judge. (ECF No. 90.) On July 3, 2014, the Court set a
telephonic status conference for July 10, 2014. (ECF No. 91.)
After discussion with the parties, the Court determined that any
further attempts to amend the Complaint to add Plaintiff's
failure-to-promote claim had been waived. (ECF No. 94.) The

Court therefore held that the instant action would proceed under the original Complaint filed (ECF No. 1). (ECF No. 94.) The Court further directed the clerk to reinstate Defendant's Motion for Summary Judgment (ECF No. 27) and set deadlines for supplemental briefing on that motion. (ECF No. 94.) Defendant filed a supplemental brief in support of its Motion for Summary Judgment on July 31, 2014. (ECF No. 97.) Plaintiff filed a supplemental brief in response on August 14, 2014 (ECF No. 98), and Defendant filed a supplemental reply on August 21, 2014 (ECF No. 99).

**B.    Factual History**

The following facts are undisputed unless otherwise indicated.

The Plaintiff, Gertude Anita Broadway, is an African American female who resides in Memphis, Tennessee. (Compl. ¶ 2, ECF No. 1.) In 2006, Broadway worked for FedEx as a Project Engineer Specialist under Operations Manager Manoocher Hakimi. (Def.'s Statement of Undisputed Material Facts ¶ 4, ECF No. 27-2.) At that time, Hakimi reported directly to FedEx Managing Director Sean Healy. (Id.) On February 23, 2006, Hakimi issued Plaintiff a performance review, rating her performance at 1.7 on a 4-point scale. (Id.) Broadway believed the score was unjustified, and therefore filed a complaint using FedEx's internal "Guaranteed Fair Treatment" ("GFT") procedure. (Id.)

Plaintiff's complaint requested that the performance score be removed or changed.  (Id.)

On March 10, 2006, Broadway met with Healy regarding her GFT complaint.  (Id. ¶ 5; see Broadway Decl. ¶ 6, ECF No. 36-1.) During the meeting, Plaintiff told Healy that she wanted to be moved to a different manager.  (Def.'s Statement of Undisputed Material Facts ¶ 7, ECF No. 27-2.)  The parties contest much of what occurred during that meeting.  According to Defendant, Healy "told [Broadway] that he had found evidence that Plaintiff had significant performance problems . . . ."  (Def.'s Statement of Undisputed Material Facts ¶ 6, ECF No. 27-2.)  Further, Defendant contends that "Healy did not believe it appropriate to move Plaintiff at that point because there had not been an opportunity for Plaintiff's performance problems to be properly addressed by Hakimi through FedEx's performance improvement procedure."  (Id. ¶ 7.)  In contrast, Plaintiff asserts that "[i]n the meeting with Healy on March 10, 2006, he did not identify any performance problems [she] had."  (Broadway Decl. ¶ 6, ECF No. 36-1.)

As a result of Broadway's GFT complaint, her performance rating of 1.7 was ordered to be removed from her record. (Def.'s Statement of Undisputed Material Facts ¶ 5, ECF No. 27-2; see Broadway Decl. ¶ 8, ECF No. 36-1; Compl. ¶ 7, ECF No. 1.) Her request to be moved to a different manager was denied.

(Def.'s Statement of Undisputed Material Facts ¶ 7, ECF No. 27-2.)

In March or April of 2006, Plaintiff filed a second GFT complaint with FedEx.  (Id. ¶ 8, ECF No. 27-2; Pl.'s Resps. To Def.'s Statement of Material Undisputed Facts ¶ 8, ECF No. 38.)  The second GFT complaint was converted into an internal EEO ("IEEO") complaint by FedEx.  (Pl.'s Resps. To Def.'s Statement of Material Undisputed Facts ¶ 8, ECF No. 38.)  Part of the content of that complaint is contested.  (Id.)  Broadway has submitted the complaint as part of the record.  (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. Ex. 18, ECF No. 36-24.)  In that complaint, Plaintiff writes, "I am constantly being harassed and retaliated against based on my race and sex (African American female.  I believe the retaliation increased after a recent GFTP resulted in management having to change a performance review."  (Id. at PageID 515.)  Plaintiff then goes on to describe a number of incidents involving Hakimi that she alleges are discriminatory.  (Id. at PageID 515-18.)  Although Broadway asserts that she "named Healy" in the complaint in addition to Hakimi, she only lists Hakimi in response to the prompt, "Please explain why you feel you have been discriminated against or harassed, and by whom."  (Id. at PageID 517-18.)

Pursuant to Plaintiff's request, Healy was not involved in investigating her IEEO complaint.  (Def.'s Statement of

Undisputed Material Facts ¶ 9, ECF No. 27-2.) On May 22, 2006,

Managing Director Mike Macyauski issued an investigative report

concluding that no policy violations had been found. (Id.)

Broadway was notified of the result and that the inquiry had

been closed in late May or early June of 2006. (Id.)

During the summer of 2006, Plaintiff was assigned to work

under a different manager. (See Def.'s Statement of Undisputed

Material Facts ¶¶ 10-11, ECF No. 27-2; Pl.'s Resps. To Def.'s

Statement of Material Undisputed Facts ¶¶ 10-11, ECF No. 38.)

Plaintiff worked under the new manager, William "Trip" Jones,

through April 2009. (Def.'s Statement of Undisputed Material

Facts ¶ 11, ECF No. 27-2.) Plaintiff filed no complaints

against Jones "and does not claim to have experienced any unfair

treatment by Jones." (Id.)

In March of 2008, Healy was promoted to the position of

Vice-President. (Id. ¶ 12.) In his new role, Healy directly

supervised Managing Director Kirsten King, who in turn directly

supervised Jones. (Id.)

Defendant asserts that in June of 2008, FedEx began looking

for ways to cut costs and increase efficiency because of the

weakened economy. (Id. ¶ 13) Defendant contends that FedEx

then hired Booz & Company ("Booz") to assist with its cost-

cutting efforts. (Id. (citing Bennett Decl. ¶ 3, ECF

No. 27-8).) Broadway "denies the allegations in paragraph 13."

(Pl.'s Resps. To Def.'s Statement of Material Undisputed Facts
¶ 13, ECF No. 38.)  Although Plaintiff does cite to the
Deposition of Robert Bennett in her denial (id.), nothing in the
pages cited is inconsistent with the facts asserted by
Defendant.  (See Bennett Dep. at 82, 84, ECF No. 36-4.)

In November 2008, FedEx experienced a steep drop in
revenue.  (Def.'s Statement of Undisputed Material Facts ¶ 14,
ECF No. 27-2.)  Lower package volumes meant that FedEx did not
need the same quantity of management and staff positions it had
before the economic decline.  (Id.)  Much of what happened
thereafter is contested.

Defendant asserts that it embarked, in consultation with
Booz, on a realignment process "to better balance staffing needs
and to identify low value and/or duplicative work, and to bring
its cost structure into line with the current economic
environment."  (Id. (citing Bennett Decl. ¶¶ 4-5, ECF No. 27-8;
Bennett Dep. at 26:1-27:17, ECF No. 27-4); see also Healy Dep.
at 77:11–18, ECF No. 27-5; Healy Decl. ¶ 15, ECF No. 27-11.)
Plaintiff contends in response that "Booz did not use low value
or duplicative work as criteria when deciding who to RIF."
(Pl.'s Resps. To Def.'s Statement of Material Undisputed Facts ¶
14, ECF No. 38 (citing Bennett Dep. at 80, 84, ECF No. 36-4).)
Specifically, Plaintiff disputes whether such criteria were
reduced to writing to be distributed to Bennett's subordinates,

including Healy.  Broadway, however, has not pointed to any evidence to contradict the fact that FedEx used low value or duplicative work as criteria to reduce the size of its work force (see Bennett Decl. ¶¶ 4-5, ECF No. 27-8; Bennett Dep. at 26:1-27:17, ECF No. 27-4; Healy Dep. at 77:11-18, ECF No. 27-5; Healy Decl. ¶ 15, ECF No. 27-11).

FedEx selected Bob Bennett to lead its realignment process. (Def.'s Statement of Undisputed Material Facts ¶ 16, ECF No. 27-2.)  During the realignment, once excess work had been identified, FedEx made decisions regarding individuals to be affected.  (Id.)  In order to select which individuals were to be affected, Defendant identified job families that had comparable positions and looked to length of continuous service of employees in such comparable positions.  (Id.)

Defendant asserts that "[i]n accordance with the company-wide directive to cut costs and consolidate groups, Bennett asked Healy to develop a plan to reduce staffing by 10% while minimizing the impact to internal and external customers."  (Id. ¶ 17.)  According to Defendant, "Bennett directed Healy to review each manager area and determine the work that was providing lower value or was being performed in multiple areas so that it could be used to identify excess positions, which Healy did for each of his managers' workgroups."  (Id. (citing Bennett Decl. ¶ 8, ECF No. 27-8; Healy Decl. ¶ 15, ECF No. 27-

11; Healy Dep. at 22:11–15, 25:7–14, 77:11–18, ECF No. 36–3).)
In response, Plaintiff contends that Bennett did not direct
Healy how to assess his workforce for the realignment, but
instead that Healy "received his instructions from the PMO and
Lenny Feiler rather than Bennett." (Pl.'s Resps. To Def.'s
Statement of Material Undisputed Facts ¶ 17, ECF No. 38 (citing
Healy Dep. at 21, ECF No. 36-3).) Further, Plaintiff alleges
that "Healy cut positions and people without prior
justification." (Id. (citing Bennett Dep. at 53, 68, 76, ECF
No. 36-4).) The reference that Plaintiff makes to Healy's
deposition does not support Plaintiff's assertion. Healy did
testify that he received direction regarding the realignment
process "from [his] boss Leonard Fowler, Leonard Fowler and the
PMO, the group that [sic] Project Management Office." (Healy
Dep. at 21:8-9, ECF No. 36-3.) The direction referenced,
however, was direction not to "involv[e] anybody below [Healy's]
level" in the realignment process. (Id. at 20:21–22.) Further,
Healy testified in his deposition that it was his belief that
"Bob Bennett was the vice president responsible for the Project
Management Office." (Id. at 21:11-12.) Although Plaintiff
establishes a genuine issue of fact as to whether the
justification for positions cut by Healy was reduced to writing,
Plaintiff fails to point to anything in the record to indicate
that Bennett did not direct Healy to "review each manager area

and determine the work that was providing lower value or was being performed in multiple areas so that it could be used to identify excess positions . . . ." (Def.'s Statement of Undisputed Material Facts ¶ 17, ECF No. 27-2.) Additionally, Defendant's assertions as to the instructions communicated to Healy regarding FedEx's realignment effort are supported by facts in the record. (See Bennett Decl. ¶ 8, ECF No. 27-8; Healy Decl. ¶ 15, ECF No. 27-11; Healy Dep. at 22:11-15, 25:7-14, 77:11-18, ECF No. 27-5.)

Defendant asserts that it is undisputed that "[i]n Jones' workgroup, Healy identified the following functions as low value without any consideration to which individuals might have been performing those duties: (1) web support for Ramp Engineering; (2) the Density Project; (3) Automation of Dangerous Goods (Auto DG); and (4) the Winter Operations manual." (Def.'s Statement of Undisputed Material Facts ¶ 18, ECF No. 27-2. (citing Healy Decl. ¶ 16, ECF No. 27-11).) Plaintiff does not point to anything in the record to contest Defendant's evidence, but instead states that "this allegation is conclusory, argumentative, self[-]serving and is not supported by documents." (Pl.'s Resps. To Def.'s Statement of Material Undisputed Facts ¶ 18, ECF No. 38.)

Defendant explains that the reasons Healy selected the functions he did as low value were that "web support was more

properly a function that should have been assigned to another group," and that "the Density Project, Auto DG, and the Winter Operations manual were all projects whose size and scope had significantly diminished over time due to the maturity of the initiatives." (Def.'s Statement of Undisputed Material Facts ¶ 19, ECF No. 27-2 (citing Healy Decl. ¶¶ 17–18, ECF No. 27-11; Healy Dep. at 28:5–25, 32:6–33:1, 34:18–35:5, 42:24–43:14, 44:15–45:10, ECF No. 27-5; Healy Dep. Ex. 1, ECF No. 27–5 at PageID 231–32).) Plaintiff responds that Healy in fact made the decision to remove her "due to his discriminatory racial animus." (Pl.'s Resps. To Def.'s Statement of Material Undisputed Facts ¶ 19, ECF No. 38.) In support of her allegation, Plaintiff cites her own statement that Managing Director Kirsten King was the only managing director to demote African American engineers and notes that Jones assigned her work functions to other engineers. (Id.)

Plaintiff further contends that Healy did not use the process he described to determine which position should be eliminated. (Id.) Plaintiff argues that there was a set of written criteria for determining whom to eliminate that Defendant failed to use when he removed Plaintiff. (Id. (citing Pl.'s Ex. 37, Selection Criteria – 3/9/2009, ECF No. 36-45).) Plaintiff cites to a memorandum dated March 9, 2009 from two attorneys to Booz & Co. with a subject line, "FedEx Express SG&A

Selection Criteria." (Id.) That document sets forth "criteria that should be used when analyzing the FedEx Express data extract dated March 6th and March 9th, 2009 for reorganization and realignment." (Pl.'s Ex. 37, Selection Criteria – 3/9/2009, ECF No. 36-45.) The document goes on to note that "[t]here are six divisions in which selections will have to be made." (Id.) According to the March 9, 2009 memorandum, outside of the Finance division, "any selection made will be based on continuous service." (Id.) The document includes a qualification, though, stating that "[i]n any division, when a 'Job Function' is indicated . . . only incumbents with that same 'Job Function,' (region or city) should be compared." (Id.) Notably, the memo does not contradict Defendant's assertion that Bennett directed Healy to identify low-value work. Instead, it suggests that once low-value functions have been identified, a tie-breaker between employees doing such work is the length of each employee's continuous service.

Defendant contends that at the time of the realignment, Plaintiff performed the following functions: "web support for Ramp Engineering, the Density Project, Auto DG, and the lift/bump priority list." (Def.'s Statement of Undisputed Material Facts ¶ 20, ECF No. 27-2.) Plaintiff argues that in addition to those functions, she was also assigned as "Jump/Seat representative." (Pl.'s Resps. To Def.'s Statement of Material

14

Undisputed Facts ¶ 20, ECF No. 38.)  The fourth function that
Defendant alleges was identified by Healy as low value, "Winter
Operations," was being performed by an African American male
Project Engineer Specialist, Tony Pittman.  (Def.'s Statement of
Undisputed Material Facts ¶ 20, ECF No. 27-2.)  Plaintiff's
length of time in continuous service to FedEx was less than
Pittman's, and her active performance review score was lower
than Pittman's.  (Id. ¶ 21.)  The parties do not agree as to
whether Pittman had more specific skills and experience than
Plaintiff for functions that would remain in Jones' group after
the realignment.  (Id.; Pl.'s Resps. To Def.'s Statement of
Material Undisputed Facts ¶ 21, ECF No. 38.)

      Plaintiff was informed that her position was being
eliminated in early April 2009.  (Def.'s Statement of Undisputed
Material Facts ¶ 22, ECF No. 27-2.)  Plaintiff applied for
several jobs internally at FedEx.  (Id. ¶¶ 23–24.)  Within a
month, Plaintiff accepted a position in Albuquerque with FedEx.
(Id. ¶ 24.)  Soon thereafter, in July of 2009, Plaintiff bid on
and was offered a position back in Memphis, Tennessee at a lower
salary, which she accepted.  (Id. ¶ 25.)  Since January 17,
2012, Plaintiff has worked for FedEx as a grade 24 Engineering
Specialist.  (Id.)

      Following the realignment, Plaintiff filed an IEEO
complaint claiming that the selection of her position for

realignment was the result of retaliation. (Id. ¶ 32.) Another
investigation was performed, but no policy violations were
found. (Id.)

At the time that Plaintiff's position was selected for
realignment, Rachel Riley, a white female, also worked under the
same manager. (Id. at ¶ 27.) Riley's position was not selected
for realignment. (Id.) One of Riley's duties was to administer
AOD audits. (Id. ¶ 28.) Plaintiff had no experience performing
AOD audits. (Broadway Dep. 197:2-9, ECF No. 27-3.) Healy
considered the AOD audit a critical function to his division.
(Def.'s Statement of Undisputed Material Facts ¶ 28, ECF
No. 27-2.) Plaintiff contends that during the realignment, the
only employees under Healy that "actually lost their engineering
jobs, titles, grades and Memphis, Tennessee location" were
African American employees. (Pl.'s Resp. Opp'n Def.'s Mot.
Summ. J. at 3, ECF No. 59.) In support of this contention,
Plaintiff cites to a declaration of Cherita Carpenter. (Id.)
Carpenter, however, does not purport to have personal knowledge
of the effects of the realignment on Healy's other employees.
(See Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. Ex. 11, ECF No. 36-
12.)

On December 15, 2010, Plaintiff filed the instant action,
alleging that the selection of her position for realignment was
racially discriminatory and retaliatory for protective conduct

in violation of Title VII of the Civil Rights Act of 1964.
(Compl., ECF No. 1.)

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a); accord Haddad v. Alexander, Zelmanski, Danner &
Fioritto, PLLC, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam).
"A fact is 'material' for purposes of summary judgment if proof
of that fact would establish or refute an essential element of
the cause of action or defense." Bruederle v. Louisville Metro
Gov't, 687 F.3d 771, 776 (6th Cir. 2012). "A genuine dispute of
material facts exists if 'there is sufficient evidence favoring
the nonmoving party for a jury to return a verdict for that
party.'" Am. Copper & Brass, Inc. v. Lake City Indus. Prods.,
Inc., 757 F.3d 540, 543-44 (6th Cir. 2014) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

"The moving party bears the initial burden of demonstrating
the absence of any genuine issue of material fact." Mosholder
v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "In considering a
motion for summary judgment, [the] court construes all
reasonable inferences in favor of the nonmoving party."
Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing

17

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); see also Phelps v. State Farm Mut. Auto. Ins. Co., 736 F.3d 697, 702 (6th Cir. 2012). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Phelps, 736 F.3d at 703 (quoting Anderson, 477 U.S. at 251-52). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 252).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49 (citing Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(e)). "'When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper.'" Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670

F.3d 677, 680 (6th Cir. 2012) (en banc)); see also Kalich v.

AT&T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

"To show that a fact is, or is not, genuinely disputed,

both parties are required to either 'cite[] to particular parts

of materials in the record' or 'show[] that the materials cited

do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to

support the fact.'"  Bruederle, 687 F.3d at 776 (alterations in

original) (quoting Fed. R. Civ. P. 56(c)(1)); see also

Mosholder, 679 F.3d at 448 ("To support its motion, the moving

party may show 'that there is an absence of evidence to support

the nonmoving party's case.'") (quoting Celotex Corp., 477 U.S.

at 325)).  "Credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge[.]"  Martinez,

703 F.3d at 914 (alteration in original) (quoting Anderson,

477 U.S. at 255) (internal quotation marks omitted).

"The court need consider only the cited materials, but it

may consider other materials in the record."  Fed. R. Civ.

P. 56(c)(3); see also Pharos Capital Partners, L.P. v. Deloitte

& Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam)

("[T]he district court has no 'duty to search the entire record

to establish that it is bereft of a genuine issue of material

fact'" (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir.

2008))); <u>Emerson v. Novartis Pharm. Corp.</u>, 446 F. App'x 733, 736
(6th Cir. 2011) ("'[J]udges are not like pigs, hunting for
truffles' that might be buried in the record." (alteration in
original) (quoting <u>United States v. Dunkel</u>, 927 F.2d 955, 956
(7th Cir. 1991))).

## III. ANALYSIS

Defendant FedEx moves for summary judgment on all of
Plaintiff's claims pursuant to Rule 56 of the Federal Rules of
Civil Procedure. (Mot. Summ. J., ECF No. 27.) Defendant argues
that summary judgment is warranted because Plaintiff cannot make
out a prima facie case for either racial discrimination or
retaliation. (Mem. Supp. Mot. Summ. J. at 2, 9-10, ECF No. 27-
1.) With respect to her racial discrimination claim, Defendant
argues that Plaintiff "cannot demonstrate the existence of
racial animus or any causal link between racial animus and the
determination to eliminate her position. Moreover, Plaintiff
cannot demonstrate that FedEx's stated rationale was
pretextual." (<u>Id.</u> at 2) As to Plaintiff's retaliation claim,
Defendant makes four assertions: first, that Plaintiff did not
engage in any protected activity within the three years before
the realignment; second, that the relevant decision-maker was
not on notice of any protected activity; third, that there was
no causal link between any protected activity and the action at

issue; and fourth, that Plaintiff cannot establish pretext.
(Id. at 10-11.)

Plaintiff argues in response that "the defendant and the
plaintiff have presented facts which show the existence of a
material factual dispute regarding whether plaintiff was
discriminated against when she was riffed from her position in
April, 2009." (Pl.'s Revised Submission DE 37 per Ct. Order at
7, ECF No. 59.) Plaintiff suggests that there is ample
circumstantial evidence to make a prima facie case of racial
discrimination that can withstand summary judgment. (See id.)
Plaintiff fails to respond to Defendant's argument that she
cannot make out a prima facie case for retaliation. (See id.)

The Court considers Defendant's motion for summary judgment
first with respect to Plaintiff's racial discrimination claim
under Title VII, and then with respect to Plaintiff's
retaliation claim.

**A.    FedEx's Motion for Summary Judgment on Plaintiff's
       Racial Discrimination Claim Under Title VII**

A claim for racial discrimination in violation of Title VII
of the Civil Rights Act of 1964 may be proven by direct or
circumstantial evidence. When relying on circumstantial
evidence, a plaintiff must generally overcome the McDonnell-
Douglas "tripartite burden-shifting framework." Bryson v. Regis
Corp., 498 F.3d 561, 570 (6th Cir. 2007) (citing McDonnell

_Douglas Corp. v. Green_, 411 U.S. 792 (1973)).  In a wrongful

termination case, that means a plaintiff must first prove by a

preponderance of the evidence a prima facie case of

discrimination by introducing evidence sufficient to support the

following findings: "(1) that he is in a protected class; (2)

that he was terminated; (3) that he was qualified for the job;

and (4) that a similarly-situated person who was not in the

protected class received the job."  _Mynatt v. Lockheed Martin_

_Energy Sys., Inc._, 271 F. App'x 470, 477 (6th Cir. 2008) (citing

_Barnes v. GenCorp, Inc._, 896 F.2d 1457, 1465 (6th Cir. 1990)).

In a RIF case, the fourth element can be established in one of

two ways.  First, the fourth element can be established with two

showings: first, that "another employee [was] hired or

reassigned to perform the plaintiff's duties," _Barnes_, 896 F.2d

at 1465; and, second, submission of "'additional direct,

circumstantial, or statistical evidence tending to indicate that

the employer singled out the plaintiff for discharge for

impermissible reasons.'"  _Rowan v. Lockheed Martin Energy Sys.,_

_Inc._, 360 F.3d 544, 547 (6th Cir. 2004) (quoting _Ercegovich v._

_Goodyear Tire & Rubber Co._, 154 F.3d 344, 350 (6th Cir.1998)).

An employee is not considered "replaced" if her duties are

assumed by another employee in addition to that employee's other

responsibilities.  _See Schoonmaker v. Spartan Graphics Leasing,_

_LLC_, 595 F.3d 261, 267 (6th Cir. 2010) (citing _Sahadi v._

Reynolds Chem., 636 F.2d 1116, 1117 (6th Cir. 1980)). The fourth element in a RIF case can also be established by showing that another employee in the same position outside the protected class was retained despite the plaintiff "possess[ing] superior qualities." Id.

The parties do not dispute that a RIF, in which "business considerations cause an employer to eliminate one or more positions within the company," Barnes, 896 F.2d at 1465, occurred in this case. (See Mem. Supp. Mot. Summ. J. at 3, ECF No. 27-1; Pl.'s Revised Submission DE 37 per Ct. Order at 4, ECF No. 59.)

"[I]f the plaintiff presents sufficient evidence to make out a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, non-discriminatory reason for the action taken; this burden is one of production only, not of persuasion." Gray v. Toshiba Am. Consumer Products, Inc., 263 F.3d 595, 599 (6th Cir. 2001) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "If the employer does so, the burden returns to the plaintiff to prove that the employer's stated reason is pretextual." Id. (citing Burdine, 450 U.S. at 255).

### 1.  Plaintiff's Prima Facie Case

The Court finds that Defendant has met its "initial burden of demonstrating the absence of any genuine issue of material fact," Mosholder, 679 F.3d at 448, with respect to the fourth element of Plaintiff's prima facie case.  Defendant has pointed to substantial evidence in the record that indicates that no similarly situated employee "replaced" Plaintiff following the reduction in force, and that Defendant did not single out Plaintiff for discriminatory treatment.  Defendant cites the Declaration of Robert Bennett to show that he, "[i]n accordance with the company-wide directive to cut costs and consolidate groups . . . directed[ed] Healy to review each manager area and determine if there was work that was providing lower value or was being performed in multiple areas so that it could be used to identify excess positions."  (Bennett Decl. ¶ 8, ECF No. 27-8).  Defendant also cites the Declaration of Sean Healy to show that Healy followed Bennett's Directive.  (See Healy Decl. ¶ 15-20, ECF No. 27-11.)  Healy states that he identified four functions as low value, three of which were performed by Plaintiff, and one by another African American employee under Healy.  (Id. ¶ 16.)  As between Plaintiff and the other identified employee, Healy stated that "[i]n accordance with the applicable criteria, Broadway's position was therefore deemed to be an 'excess position' and was selected for realignment."  (Id.

¶ 21; <u>see also</u> Healy Dep. at 22:11–15, 25:7–14, 77:11–18, ECF

No. 36-3).)

Defendant provides further evidence that Broadway was not

replaced by citing to the Declaration of Trip Jones, Plaintiff's

manager before the realignment. (Def.'s Statement of Undisputed

Material Facts ¶ 26, ECF No. 27-2 (citing Jones Decl. ¶ 7, ECF

No. 27-12).) According to Jones, "Following the realignment,

Broadway was not replaced. Her job duties were either

eliminated or absorbed by other employees." (Jones Decl. ¶ 7,

ECF No. 27-12.) All the evidence cited by Defendant indicates

that Plaintiff was not singled out for discrimination when her

position was terminated, and that she was not replaced.

Because Defendant's evidence is sufficient to meet its

initial burden, the "burden shifts to the nonmoving party to set

forth specific facts showing a triable issue of material fact."

<u>Mosholder</u>, 679 F.3d at 448–49 (citing <u>Matsushita</u>, 475 U.S. at

587; Fed. R. Civ. P. 56(e)).

Plaintiff contends that she was replaced (<u>see</u> Pl.'s Resps.

To Def.'s Statement of Material Undisputed Facts ¶ 26, ECF No.

38), but her primary argument to support that assertion actually

supports Defendant's contention. Plaintiff states that her

"work was distributed to other project engineering specialists

including Engineering Specialist Rachel Riley (Auto DG)." (<u>Id.</u>)

The Sixth Circuit has made clear that an employee is not

replaced if her work is distributed among other employees.
Schoonmaker, 595 F.3d at 267. That Riley and other employees
assumed Plaintiff's work responsibilities is relevant to the
determination of whether she was replaced, but actually suggests
that she was not. See id. Broadway also points to the fact
that a Caucasian engineer, Bruce Houston, was later moved into
Jones' unit to support her contention that she was replaced.
(Id. (citing Jones Dep. At 55-56, ECF No. 36-6).) According to
Jones' deposition testimony, Houston was not moved into his unit
until roughly a year after the realignment and was brought in
"because of the start of another new strategic project that he's
the lead on." (Jones Dep. at 56, ECF No. 36-6.) Because of the
length of time between Houston's start and Plaintiff's
termination, and the uncontested assertion that he performed
different work than Plaintiff, such evidence is too attenuated
to support Plaintiff's claim. See Watkins v. Sverdrup Tech.,
Inc., 153 F.3d 1308, 1316 (11th Cir. 1998) (holding that hiring
an engineer with different job responsibilities 10 months after
terminating another engineer as part of a RIF does not
constitute replacement to establish a prima facie case).

Plaintiff also fails to show a genuine issue of material
fact as to whether another employee in the same position outside
of her protected class was retained. Although Plaintiff
correctly notes that Rachel Riley was retained while Plaintiff

was terminated, Riley did not have the same position as
Plaintiff.  Riley had a different title and performed different
duties from Plaintiff.  (Pl.'s Resps. To Def.'s Statement of
Material Undisputed Facts ¶¶ 28-30, ECF No. 38.) See Anderson v.
Premier Indus. Corp., 62 F.3d 1417 (6th Cir. 1995) (unpublished)
(finding that employees with the same title but different job
functions are not similarly situated).

Plaintiff has failed to establish the existence of a
triable issue of material fact regarding a necessary element of
her claim.  In light of the foregoing, the court GRANTS
Defendant's Motion for Summary Judgment with respect to
Plaintiff's claim of racial discrimination under Title VII.

   *2.   Pretext*

Even if Plaintiff had shown a that a genuine issue of
material fact existed as to her prima facie case, she has also
failed to show that, viewing the facts in the light most
favorable to her, there is a genuine issue of material fact as
to whether the reason asserted for her termination was in fact
pretextual.

If Plaintiff Broadway were to have presented a prima facie
case sufficient to withstand summary judgment, the burden would
shift to FedEx "to produce evidence of a legitimate, non-
discriminatory reason for the action taken; this burden is one
of production only, not of persuasion." Gray, 263 F.3d at 599.

If FedEx were to do so, "the burden returns to the plaintiff to prove that the employer's stated reason is pretextual." Id. "The Sixth Circuit has repeatedly held that an employer can establish a legitimate, nondiscriminatory reason for terminating a plaintiff by showing that the termination was part of a RIF." Southmayd v. Apria Healthcare, Inc., 412 F. Supp. 2d 848, 858 (E.D. Tenn. 2006); see also, e.g., Douglas v. Int'l Auto. Components Grp. N. Am., Inc., 483 F. App'x 178, 180 (6th Cir. 2012) (indicating that termination as part of a RIF per se establishes a legitimate, nondiscriminatory reason); Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 897 (6th Cir. 1997) (same). Were Plaintiff to have presented a prima facie case sufficient to withstand summary judgment, therefore, the burden would shift back to her to demonstrate a genuine issue of material fact as to whether Defendant's stated reason is pretextual. The Court finds Plaintiff has failed to demonstrate such a genuine issue of material fact.

Plaintiff advances three arguments that her termination was in fact due to pretext. First, Plaintiff argues that "Healy's explanation is suspect because of the more than 50 engineers in his division[,] [h]e only terminated as engineers two of them. Both were black." (Pl.'s Revised Submission DE 37 per Ct. Order at 9, ECF No. 59.) Plaintiff fails, however, to cite any admissible evidence in support of her contentions. Under Rule

28

56(c)(2) of the Federal Rules of Procedure, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Defendant has objected to the evidence Plaintiff cites. (Def.'s Reply Pl.'s Resp. Mot. Summ. J. at 10, ECF No. 42.) In support of her argument, Plaintiff relies heavily on the Declaration of Cherita Carpenter (Pl.'s Revised Submission DE 37 per Ct. Order at 3, ECF No. 59 (citing Carpenter Decl., ECF No. 36-12)). Plaintiff cites Carpenter's Declaration to establish the proposition that "only [Plaintiff] and another black engineer, Melba Hassanen, under Healy, actually lost their engineering jobs, titles, grades, and Memphis, Tennessee location." (See id.) The paragraph that Plaintiff cites, however, is not based on her personal knowledge, and thereby constitutes implicit hearsay. (See Carpenter Decl. ¶ 13 ("It is my understanding that two engineers in my section received different work assignments as a result of the forced reorganization in 2009.").) Under Rule 56(c) of the Federal Rules of Civil Procedure and Rule 802 of the Federal Rules of Evidence, such evidence cannot be considered in determining whether Plaintiff has met her burden to establish the existence of a material issue of triable fact.[1]

---

[1] Even if Plaintiff were to have established this fact, it would not be material. Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 267 (6th Cir. 2010) ("Although Barnes holds that statistical evidence may satisfy

Second, Plaintiff argues that the evidence suggests that
Healy's identification of her work as of lower value was due to
Healy's "tend[ency] to devalue the work of black engineers."
(Pl.'s Revised Submission DE 37 per Ct. Order at 4-5, ECF No.
59.)  In support of this argument, Plaintiff again fails to cite
to any admissible evidence.  Plaintiff cites to an internal
FedEx email, dated July 28, 2008, that purports to relate to an
IEEO complaint filed by FedEx employee Mike Odigie.  (Id.
(citing Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. Ex. 19, ECF No.
36-26).)  Odigie's Declaration indicates, but does not state
explicitly, that he is an African American male.  (See Odigie
Decl., ECF No. 36-11.)  Odigie filed an IEEO complaint against
Healy in June 2008 (id. ¶ 9) that included charges that FedEx
described at the time as "discrimination and/or harassment."
(Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. Ex. 19, ECF No. 36-26 at
PageID 522.)  FedEx performed an investigation following
Odigie's IEEO complaint, and determined that "corrective action
[was] necessary."  (Id. at PageID 521.)  The corrective action
indicated, however, was to "[e]ncourage[] minorities to apply
when positions become available," "to conduct 1 on 1s with
employees to determine employee interest in future endeavors and
when opportunities arise as appropriate [sic] expose employees
to growth experiences," and to "[a]ssist in needed development

the fourth element in a work force reduction case, see Barnes, 896 F.2d at
1465, such a small statistical sample is not probative of discrimination.")

as able." (Id.) Nothing in the "corrective action" plan
suggests that Healy "tended to devalue the work of black
engineers." As the evidence cited does not suggest that Healy
acted in a discriminatory fashion, it is not probative of any
fact at issue in this case.

To the extent that Plaintiff argues that Odigie's
Declaration about the discrimination he alleges he experienced
supports her claim, the Sixth Circuit has held that testimony
from such a witness is inadmissible. In Schrand v. Pacific
Electric Co., the Sixth Circuit indicated that testimony from
non-plaintiffs to the effect that they too have been
discriminated against violates Rule 403 of the Federal Rules of
Evidence. 851 F.2d 152, 156 (6th Cir. 1988). According to the
Sixth Circuit, the probative value of such evidence is
"substantially outweighed by the danger of unfair prejudice
flowing from its admission." Id. Any such testimony from
Odigie is thereby similarly inadmissible.

Finally, Plaintiff argues that there is a genuine issue of
material fact as to whether Defendant's characterization of
Plaintiff's position as "low value" was pretextual because "no
reasonable person by any stretch of the imagination could arrive
at Healy's conclusion" that her work was low value. (Pl.'s
Revised Submission DE 37 per Ct. Order at 6, ECF No. 59.)
Plaintiff's argument is unpersuasive. "In order to show pretext

with regard to the relative qualifications between a plaintiff and any other employee, the plaintiff must demonstrate that defendant's business judgment 'was so ridden with error that defendant could not have honestly relied upon it.'" Messner v. Lockheed Martin Energy Sys., Inc., 126 F. Supp. 2d 502, 521 (E.D. Tenn. 2000) (quoting Lieberman v. Gant, 630 F.2d 60, 65 (2nd Cir.1980)). Plaintiff argues that "[a]ny comparison of [her and Pittman (an engineer not terminated)] would result in the conclusion that plaintiff's job duties were far greater in number and importance than Pittman's." (Pl.'s Revised Submission DE 37 per Ct. Order at 5, ECF No. 59.) Plaintiff's claim is unsubstantiated. Plaintiff fails to point to any evidence that would suggest that her duties were more important -- or that her position was of higher value -- than Pittman's. To the extent Plaintiff also argues that Riley's retention indicates pretext, Plaintiff's argument similarly fails for the same reason: Plaintiff has not pointed to any evidence to allow a reasonable trier of fact to conclude that a business decision to terminate Plaintiff and not Riley "was so ridden with error that defendant could not have honestly relied upon it." See Messner, 126 F. Supp. 2d at 521. As a result, Plaintiff falls short of demonstrating the existence of any genuine issue of material fact as to whether FedEx's business judgment was sufficiently ridden with error to establish pretext.

Accordingly, even if Plaintiff had established a sufficient prima facie case to withstand summary judgment, she has still failed to show any genuine issue of material fact as to whether her termination was pretextual.

### B. FedEx's Motion for Summary Judgment on Plaintiff's Retaliation Claim Under Title VII

"Title VII forbids an employer from 'discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII] [the so-called "opposition clause"], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII] [the so-called "participation clause"].'" Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 719-20 (6th Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 2000e-3(a)). "Unlawful employment practices under Title VII include any actions taken on the basis of race, color, religion, sex, or national origin that 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.'" Id. at 720 (quoting 42 U.S.C. § 2000e-2).

To make out a prima facie case for retaliation under Title VII, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) this exercise of protected

rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment." Morris v. Oldham Cnty. Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000).

Defendant argues that Plaintiff has failed to establish the first, second, and fourth elements of her retaliation claim. The Court addresses each of Defendants arguments in turn.

Defendant argues that Plaintiff can show no protected activity within at least three years of the realignment. Plaintiff did, however, engage in protected conduct in March or April of 2006, when it is uncontested that Plaintiff filed an IEEO complaint. In that complaint, Plaintiff alleged that she was "constantly being harassed and retaliated against based on my race and sex (African American female)." (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. Ex. 18, ECF No. 36-24.) "The opposition clause . . . covers conduct such as 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer – e.g., former employers, union, and co-workers.'" Niswander, 529 F.3d at 721

(quoting Johnson v. Univ. of Cincinnati, 215 F.3d 561, 579 (6th Cir. 2000)). The IEEO falls under the opposition clause, and is therefore protected conduct. Plaintiff points to no evidence of any further protected conduct prior to the realignment.

Next, Defendant argues that Healy was not aware of Plaintiff's protected conduct. The Court finds that Plaintiff has raised a genuine issue of fact as to whether Healy was aware of her conduct. The April 2006 complaint that alleged that she was "constantly being harassed and retaliated against based on [her] race and sex" was addressed to Healy. (Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. Ex. 18, ECF No. 36-24.)

Last, Defendant argues that there was no causal connection between the protected activity and the adverse employment action. Defendant's argument is well-taken. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection." Wilson v. Cleveland Clinic Found., 13-3258, 2014 WL 4397205, at *6 (6th Cir. Sept. 8, 2014) (citing Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 525 (6th Cir. 2008)). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."

<u>Mickey</u>, 516 F.3d at 525.  Sixth Circuit cases that have allowed a "prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months."  <u>Parnell v. West</u>, No. 95-2131, 1997 WL 271751, at *3 (6th Cir. May 21, 1997).  A time lag of even seven months "normally cannot support an inference of a causal link."  <u>Wilson</u>, 2014 WL 4397205, at *6.  In the instant case, the time lag alleged is roughly three years between the protected conduct and the adverse employment action.  (<u>See</u> Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. Ex. 18, ECF No. 36-24.)  Because Plaintiff fails to put forth any other evidence that Defendant's conduct was retaliatory, Plaintiff has failed to meet its burden to establish a prima facie case consistent with the requirements of Rule 56 of the Federal Rules of Civil Procedure.  Accordingly, Defendant's Motion for Summary Judgment with respect to Plaintiff's retaliation claim is hereby GRANTED.

## IV.  CONCLUSION

For the reasons stated above, FedEx's Motion for Summary Judgment (ECF No. 27) is GRANTED.  Accordingly, all claims by Plaintiff against FedEx are hereby DISMISSED WITH PREJUDICE as a matter of law.

**IT IS SO ORDERED,** this 6th day of November, 2014.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE